EDITH H. JONES, Circuit Judge:
Two sisters were about 20 and 25 years old when they received over a million dollars each, and they hired a lawyer to advise them on potential tax liability. The Commissioner charged them with negligence and substantial understatement penalties[2] for treating the money as a gift even though they followed one alternative course recommended by the tax lawyer and even though the Commissioner herself relied on their theory in asserting tax liability of the girls’ father.[3] Under these circumstances, the Tax Court’s imposition of the penalties was clearly erroneous. The Tax Court also erred in holding that Teresa’s ex-husband procedurally defaulted his case. We REVERSE.
I. BACKGROUND
The underlying facts are simplified for' present purposes. In 1979, Larry Parker, the girls’ father, acquired an interest in 440 acres of undeveloped land known as Northgate Forest Property. At least part of Parker’s interest in this joint venture was held on behalf of his daughters, Teresa Delo-ney and Tracy Streber, who were then aged nineteen and fourteen. On March 4, 1981, two promissory notes in the amount of $2,000,000 each for sale of the land were endorsed, one to Teresa and the other one to Teresa as custodian for Tracy who was still a minor.. Both notes were due and payable on March 4, 1985. Neither Teresa nor Tracy was involved in negotiating the terms of the agreement.
At some point, Parker and his then-wife, the sisters’ mother, divorced.
When the notes were not paid on the due date, Parker, Teresa, Tracy, and other interested parties filed a suit against the makers of the notes. On April 23,1985, the suit was settled, and Teresa and Tracy received eighty-five percent of the face value of the notes, ie., $1,700,000 apiece.
*218 Within a few weeks, Teresa and Tracy met with attorney Edwin Hunter to discuss the tax consequences of their income from the joint venture. Hunter provided Teresa and Tracy with two basic alternatives: (1) pay capital gains tax on the income they received; or (2) treat the income as a gift from Parker, who would then be liable for any taxes due on receipt of the money.
Teresa and Tracy chose the latter option. Neither Teresa, who filed a joint return with her then-husband Stephen Davis, nor Tracy reported receipt of the joint venture income on their 1985 tax returns. Parker did not report the receipt of the income either.
On October 22, 1991, the Commissioner issued statutory notices of deficiency' to Tracy, Teresa, and Stephen for 1985, stating that Tracy and Teresa should have included the joint venture income they received in their 1985 income. All three filed petitions for redetermination of the deficiency in the Tax Court.
Contemporaneously, the Commissioner, in order to avoid a “whipsaw” situation,' also issued a statutory notice of deficiency against Parker and his wife for 1985. The notice of deficiency was based on the determination that the Parkers should have included in their 1985 income tax return the joint venture income that was paid to Teresa and Tracy. Parker and his wife filed a petition for redetermination of the deficiency in the Tax Court.
Upon a motion by the Commissioner, the Tax Court consolidated all three cases for trial. The Commissioner averred that either the Parkers or Teresa and Tracy were liable for the tax, but not both.
The Tax Court found no deficiency in Parker’s 1985'income. Instead, the court found that Parker made a gift' to his daughters in 1980, and, therefore, Tracy and Teresa were liable for the taxes on the joint venture income received in 1985. The court also sustained the Commissioner’s determination of additions to tax for negligence and substantial understatement against Tracy and Teresa. Finally, the Tax Court found that Davis had failed to prosecute his case and held him[1] in default.
Teresa and Tracy filed a motion for reconsideration of the decisions concerning only the additions to tax. They argued that their actions were based on substantial authority and were reasonable and in good faith. Moreover, they maintained that their decision to treat the money as a gift from Parker was based on the advice they had received from counsel. Davis moved for reconsideration, claiming it was wrong for the court to have held him in default. The Tax Court vacated its decision in order to consider these motions.
Upon reconsideration, the Tax Court held that the sisters’ assertion that there was substantial legal and factual justification for their failure to report the joint venture income was not sufficient to convince the court to change its determination that the addition to tax should apply. The Court did not believe, that Tracy and Teresa “relied on an expert’s advice.” The Tax Court found:
• Movants met with an attorney, Edwin K. Hunter (Hunter), who, based on the facts as he knew them, explained to movants alternative tax reporting positions. However, we do not find that Hunter advised movants that they did not have to report the gains in question. The testimony on that point is ambiguous. Hunter, however, was one of the movant’s attorneys and was present throughout the trial. Hunter no doubt could have resolved any ambiguity as to what he advised movants. Nevertheless, movants did not call Hunter as a witness. Our rules do not preclude Hunter from testifying. We infer from Hunter’s failure to testify that his testimony would have been adverse to movants. Movants cannot claim that, based on expert advice, they acted with due care, or as a reasonable and ordinarily prudent person would act, in the circumstances.
The Tax Court also rejected Davis’s claim, holding that Davis had a full opportunity to participate at the trial and did not do so on his own account, although he participated in the proceedings as a witness.
Tracy and Teresa now appeal. They contend that the Tax Court erred in sustaining the Commissioner’s assessment of the negligence and substantial understatement penal *219 ties. They argue that they reasonably relied on the advice they received from their attorney, and that reliance is not nullified under the factual circumstances of this case where the taxpayers choose one of the alternatives their advisor recommends.[4] Davis filed a separate appeal making the same claim and also arguing that the Tax Court abused its discretion in holding him in default.
II. ANALYSIS
A. NEGLIGENCE PENALTY '
This court reviews the tax court’s findings of negligence under the clearly erroneous rule. See Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir.1990). Clear error exists when this court is left with the definite and firm conviction that a mistake has been made. See Chamberlain v. Commissioner, 66 F.3d 729, 732 (5th Cir.1995).
“The IRS may penalize taxpayers for an underpayment due to negligence or disregard of rules and regulations. Negligence includes any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. ‘Disregard’ includes careless, reckless, or intentional conduct.” Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir.1990) (citations omitted).
The relevant inquiry for the imposition of a negligence penalty is whether the taxpayer acted reasonably. See Reser v. Commissioner, 112 F.3d 1258, 1271 (5th Cir. 1997). “Taxpayers may not rely on someone with a conflict of interest or someone with no knowledge concerning the matter upon which the advice is given.” Chamberlain, 66 F.3d at 732. “Good faith reliance on professional advice concerning tax laws is a defense.” Durrett v. Commissioner, 71 F.3d 515, 518 (5th Cir.1996).
In this case we find that the Tax Court clearly erred when it sustained the Commissioner’s assessment of a negligence penalty, because appellants reasonably relied on the advice they received from their attorney, Edwin Hunter.
Due care does not require young, unsophisticated individuals to independently examine their tax liabilities after taking the reasonably prudent step of securing advice from a tax attorney.[5] At relatively tender ages, the appellants received large sums of money. Tracy Streber testified that she and her sister came to the conclusion that they had to seek advice from an attorney to make sure they did “the legal thing.” As she explained:
It was just known that when you get money like that, some kind of tax had to be paid and we didn’t know what it was, so we went to get counseled.
I knew that is why you had to go to a tax person.
Given their level of understanding in these matters, the appellants took the appropriate' steps to secure legal advice from attorney Edwin Hunter to ensure that their tax returns for the upcoming year complied with the law. Not only Tracy Streber, but also Davis and Betty Berwick (Tracy and Teresa’s mother, and Larry Parker’s first wife) testified that the purpose of seeking legal advice was to understand the tax consequences of their income from the joint venture and to ensure that any position they took was on sound legal footing.
Hunter advised appellants that they could either treat the joint venture income as a capital gain or as a gift from Parker. Relying on Hunter’s opinion, the appellants chose to treat the joint venture income as a gift. Due care does not require that the appellants challenge their attorney’s opinion or independently investigate the propriety of his advice. See Chamberlain, 66 F.3d at 733, As the Supreme Court held:
*220 When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant of attorney. To require the taxpayer to challenge an attorney, to seek a “second opinion,” or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. “Ordinary business care and' prudence” do not demand such actions.
United States v. Boyle, 469 U.S. 241, 251, 105 S.Ct. 687, 692-93, 83 L.Ed.2d 622 (1985) (citation omitted). Having done no; less than reasonable prudence demands, the appellants should not be held negligent in their treatment of the joint venture income.
The I.R.S. asserts that the Tax Court found that Hunter never advised them “that they did not have to report the gains in question.” This conclusion, however, is contrary to the overwhelming weight of the evidence, which supports the proposition Hunter did in fact tell the appellants that they should treat the joint venture income as a gift from Parker.
First, according to. the witnesses, Hunter advised his clients to select the alternative that would result in more tax revenue for the government and would, .therefore, be less likely to receive an I.R.S. challenge. Although the position the sisters ultimately adopted meant that they would not be personally liable for.tax on their joint venture income, when Hunter was rendering his advice, the appellants were concerned over the way in which the I.R.S. might have viewed a decision that would have resulted in less tax liability for their father than other positions would have required- The appellants were worried that Parker’s own rather questionable practices might make them more susceptible to a. government audit and possible penalties if they took anything less than a careful tax position in this case. Tracy Stre-ber testified about the appellants’ choice to treat the joint venture income as a gift: “We didn’t want to defraud the government. We didn’t want them to think we were in cahoots or whatever with my father, to defraud them.” Because the gift tax rate was higher than the capital gains tax rate, Hunter stated that the I.R.S., might view the appellants’ decision to treat the joint venture income as a capital gain as an attempt to conspire with Parker to limit his tax liability and the tax liability for all the family members.[6]
Second, the evidence shows that Hunter actively supported his clients’ position to treat the joint ventaré income as a gift. In June 1986, for example, Parker’s attorney wrote to Hunter encouraging him to reconsider Hunter’s filing of the appellants’ amended tax returns, which “reflect[ed] their receipt of certain income as a gift from their father.”[7] A month earlier, Hunter participated in his clients’ efforts to notify the IRS of the possible deficiencies in Parker’s 1985 tax return.[8] Given the substantial risks associated with voluntarily reporting to the IRS in this case, it is hard to understand how the Tax Court could have concluded that Hunter would have advised the appellants to take any position other than the one they adopted in this matter. Although the appellants understood that by informing the agency they might receive a financial reward from the government if the information proved useful, they must also have understood that this action would highlight their own tax returns for scrutiny.[9] The decision to inform on Parker to the I.R.S, not only placed the appellants at personal risk of a government *221 audit, but it also placed Hunter’s professional judgment and reputation under review. In the face of this risk, Hunter actively promoted his clients' tax position. It is impossible to reconcile Hunter’s later actions with the Tax Court finding that his initial tax advice to the sisters was “ambiguous” or that he did not actually recommend treating the joint venture income as a gift.[10]
The I.R.S. also contends that Tracy and Teresa did not in fact rely on Hunter’s advice, propounded in alternatives, because they made the “ultimate decision” not to report the income from the joint venture on their tax returns! IRS does not dispute that the legal advisor here offered several possibilities and discussed the tax ramifications of each.[11] IRS contends, however, that because the Tax Court found he did not affirmatively recommend a preferred course of action, which the taxpayers followed, the reliance on counsel defense is unavailable. We need not reach this conclusion because, overruling the Tax Court’s erroneous findings, we find that Hunter did in fact affirmatively advise and vigorously assist taxpayers’ chosen course of action. But even if the Tax Court’s findings here are accurate, unless circumstances show that a tax advisor discussed and discounted alternative tax strategies, the taxpayers should ordinarily not be held negligent for following any óf the bona fide alternatives developed by an advisor acquainted with the relevant facts. To find otherwise adds a new requirement to the reliance on counsel defense: not only must the taxpayer show that his advisor discussed how to treat a tax-related transaction, he must also show that the advisor ranked any alternatives hierarchically, and he (the taxpayer) adopted whichever alternative was at the top of the list. Otherwise, the advisor’s recommendation in a situation where bona fide alternative tax strategies exist will be found “ambiguous” and cannot furnish the basis for a taxpayer’s reasonable reliance. If this proffered method of analysis is not simply a semantical quibble designed to determine the outcome of this case, it drives a mischievous wedge between advisors and taxpayers. Advisors will be deterred from recommending alternative tax strategies, and clients will be discouraged from seeking any but the most tax-advantageous advice.
The I.R.S. finally emphasizes that the Tax Court ruled against the appellants because the court did not find Tracy Streber and Teresa Deloney to be credible. The Tax Court gave their testimony and answers “little weight.” Moreover, in its opinion on reconsideration, the Tax Court noted that Hunter could have testified on behalf of the appellants to clear up any ambiguity that might have existed over whether he, in fact, advised them to treat the joint venture income as a gift from Parker. Because the appellants chose not to call him as a witness, the court inferred, his testimony would have been adverse to their position. This reasoning is unpersuasive.
In general, a court may draw a negative inference from a party’s failure to produce a witness “whose testimony would elucidate the transaction.” Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). The strength of, the inference “is rooted in notions of common sense[,] ... will vary with the facts of each case,” United States v. Tucker, 552 F.2d 202, 210 (7th Cir.1977), and may be drawn only where *222 a witness has information “peculiarly-within his knowledge,” McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir.1989) (citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165, 1946 WL 298 (1946)). Thus, a party need not call a witness whose testimony would be cumulative “without any apprehension that a court will draw a negative inference.” 2 John Henry Wigmore, Evidence § 287, at 202-03 (Chad-bourne rev.1979).[12]
In this case, the tax court examined the evidence of four witnesses who were privy to Hunter’s conversation with his clients. These witnesses, Teresa, Tracy, Davis, and Berwick, all testified that Hunter advised his clients that they could either pay capital gains tax on the income they received or treat the income as a gift from Parker. Even assuming that Teresa and Tracy were not credible, the Tax Court never referred to the testimony of Davis and Berwick, who each confirmed that Hunter did advise his clients to treat the joint venture ineoihe as a gift from Parker. Davis said that Hunter “felt from ... hearing the case and the documents — he felt that it was a gift.” When Berwick was asked why the appellants chose to treat the income as a gift, she answered: “Because Mr. Hunter told them that in-his opinion, that was the correct one.” Contrary to this testimony, which the Tax Court neither questioned nor commented, upon, the court still held that it could not find that “Hunter advised [appellants] that they did not have to report the gains in question.” Once again, even assuming Tracy Streber and Teresa Deloney were not credible, at least two other witnesses independently supported the position that Hunter had advised his clients to treat the joint venture income as a gift from Parker. This testimony was uncontradicted. Moreover, because Hunter’s testimony would have been cumulative, and maybe counterproductive — focusing attention away from the primary issue of whether his clients were liable in the first place — and because the subject of Hunter’s advice was not peculiarly within his knowledge, see McKay, 886 F.2d at 1238, the tax court, erred when it drew an inference adverse to the appellants. To hold otherwise would in essence require the attorney to testify in all cases, involving an advice of counsel defense.
After reviewing the record, “we are left with the definite and firm conviction that a mistake has been made.” Chamberlain, 66 F.3d at 732. The appellants did rely on their attorney’s advice when they elected to treat the joint venture income as a gift from Parker. Furthermore, given the appellants’ relative youth and inexperience in business matters, they acted with all the care a reasonably prudent person would exercise under similar circumstances. See Reser, 112 F.3d at 1271. Our laws demand nothing more. Thus, we hold that the Tax Court clearly erred when it sustained the imposition of negligence penalties against the appellants.
B. SUBSTANTIAL UNDERSTATEMENT PENALTY
The second issue before this court is whether the Tax Court abused its discretion when it held appellants liable for the addition to tax for substantial understatement, pursuant to I.R.C. § 6661(a). See Heasley v. Commissioner, 902 F.2d 380, 385 (5th Cir.1990). Section 6661 provides for an addition to tax equal to twenty-five percent of the amount of any underpayment attributable to a substantial understatement of tax. If a taxpayer is able to show that there was a reasonable cause for the understatement and good faith, which may stem from reasonable reliance on the advice of professional, the I.R.S. may waive the understatement pénalty. See Heasley, 902 F.2d at 384-85; see also Reser v. Commissioner, 112 F.3d 1258, 1271-72 (5th Cir.1997).
*223 First, as has been noted, the appellants reasonably relied on the advice they received from their attorney. IRS acknowledges that “the extent of the taxpayer’s effort to asséss her proper tax liability under the law is the most important factor” in determining reasonable cause and good faith. Heasley, 902 F.2d at 385. Because of appellants’ youth and inexperience in business, reliance on counsel, and proof of “good faith” in their position by reporting the transaction to the Service as to their father’s potential liability, the conclusions this court reached in Heasley are controlling:
Applying the I.R.S.’s own regulatory standards, we find that the I.R.S. abused its discretion by failing to waive the penalty in this case. We are at a loss to determine just what the I.R.S. would find to be a reasonable cause given the Heasleys’ experience, knowledge, and education. First, the Heasleys attempted to assess their, proper tax liability by taking their taxes to a C.P.A., something they never did before. The accountant found no problem with the plan. While Danner suggested that the Heasleys use Smith, nothing else in the record connects the two. Therefore, considering this “most important factor,” the Heasleys showed reasonable cause and good faith. Second, -the Heasleys read the portions of the prospectus and other O.E.C. materials and relied on Danner to explain the rest. If neither Danner nor their C.P.A. found anything wrong with the investment, how could the Heasleys? Certainly, their failure to out-guess their financial advisor and accountant is not negligence. Finally, the Heasleys believed that they legitimately claimed the deduction and investment tax credit. Given the Heasleys’ inexperience and limited knowledge about investing, and their level of education, their misunderstanding is reasonable. The I.R.S. abused its discretion by failing to waive the penalty and the tax court erred by upholding the I.R.S.’s decision.

Id.

Second, I.R.S. too narrowly interprets the meaning of the substantial authority defense on which appellants rely to defeat this penalty.[13] This case turned on one factual issue: when Parker made the gift to his daughters. If the gift was made before 1985, Tracy and Teresa are hable for the income they received in 1985; if it was effectively made in 1985, Parker is hable. The subsidiary facts relating to this transaction were complex, largely undisputed, and not materially affected by the Tax Court’s assessment of the sisters’ lack of credibility. In a recent decision, the Eleventh Circuit explained that where the substantial authority issue turns on evidence going both ways, “there is substantial authority from a factual standpoint for the taxpayer’s position. Only if there was a record upon which the Government could obtain a reversal under the clearly erroneous standard could it be argued that from an evidentiary standpoint, there was not substantial authority____” Osteen v. Commissioner, 62 F.3d 356, 359 (11th Cir. 1995). Apart from trying to confine Osteen to its facts, an untenable position, I.R.S. does not demonstrate how its principle is inapt here. The government makes no effort to assert that the only rational tax treatment of the. transaction was as a gift made before 1985.[14]
For these reasons, the I.R.S. abused its discretion in failing to waive the penalty and the Tax Court erred in upholding the I.R.S.’s decision. See Heasley, 902 F.2d at 385. It is clear upon review of the record that the appellants had substantial factual authority for the tax position they asserted and reasonably relied on the advice of their attorney.
C. FAILURE TO PROSECUTE
Because we have held that the sisters are not liable for negligence and substantial un *224 derstatement penalties, we need not reach the merits of the dispute over Davis’s possible failure to prosecute. Davis’s derivative liability for his ex-wife’s income vitiates a default judgment. The Tax Court decision holding the appellant in default for failure to prosecute his case is reversed.
CONCLUSION
These appellants are not liable for negligence and substantial understatement penalties from their, decision to. treat the joint venture income as a gift. The decision of the Tax Court is REVERSED.

. I.R.C. § 6653(a), which has been amended following the commencement of this action, provided for additions to tax on account of negligence or intentional disregard of rules or regulations. I.R.C. § 6661(a), which has since been repealed, provided, during the years at issue, for an addition to tax in the case of an underpayment due to a substantial understatement.

.Ón appeal, the daughters do not, however, contest liability for the base amount of tax.

. Edwin K. Hunter, appellant’s counsel of record before the tax court, filed an amicus curiae brief.

. Cf. Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir.1990) (”[D]ue care does not require moderate-income investors ... to independently investigate their investments. They may rely on the expertise of their financial advisors and ac-countants____”).

. Davis testified that Hunter explained that if they were to choose to treat the joint venture income as a capital gain, it was very likely that the I.R.S. would maintain that they "still have a liability as far as owing tax on the money."

. Letter from David S. Gamble, Attorney to Larry Parker, to Edwin K. Hunter 1 (June 25, 1986).

. See Memorandum of Interview, Internal Revenue Service (May 9, 1986) (noting the presence of Edward K. Hunter, Attorney for Informants, Teresa Davis and Stephen Davis).

.The Evaluation Report on Claim for Reward makes clear that the information provided to the IRS had substantial value, because otherwise Parker's 1985 tax return would not have been audited.

. The dissent does not even mention the correspondence between Hunter and Parker's attorney, which has to be premised on Hunter’s advice that the income the girls received was a gift. The dissent, like the Tax Court, casts no doubt on the veracity of Berwick’s and Davis’s testimony about Hunter’s advice. Finally, the dissent unnecessarily flays Hunter over a subsequent legal malpractice action the girls have pending against him. The lawsuit is irrelevant to the question of their lack of negligence and due diligence, at least in a case such as this, where the advice he gave — that there was a gift — was sound enough to be the basis of one of IRS’s alternative positions.

. The dissent goes even further than the Tax Court did in implying that Tracy and Teresa decided on their own not to report the income from the notes. First, the dissent does not concede, as IRS does, that Hunter advised the girls of alternative tax treatments of the income. Second, the dissent accuses the girls of not furnishing Hunter with appropriate documentation, but neither IRS nor the Tax Court mentioned this sort of problem, which is not inferable from any of the Tax Court's findings.

. "In general, put somewhat more strongly, there is a general limitation ... that the inference cannot fairly be drawn except from the nonproduction of witnesses whose testimony would be superior in respect to the fact to be proved.” 2 Wigmore § 287, at 203. Two witnesses — Berwick and Davis — whose credibility went unchallenged by the IRS were present during the meeting in which Hunter rendered his advice. Under these circumstances, Hunter’s hypothetical testimony could not fairly be characterized as superior to that of these other witnesses. Their testimony of what they heard Hunter say is not a priori inferior to Hunter's possible testimony of what he remembers advising to his clients.

. I.R.C. § 6661(b)(2)(B)(i) provided that any "substantial” understatement of tax "shall be” reduced "by that portion of the understatement which is attributable to []the tax treatment of any item ... if there is or was substantial authority for such treatment____"

. The dissent ignores Osteen and makes a legal argument that neither IRS nor the Tax Court did, namely,.that "substantial authority” means only legal, not factual authority.