T.C. Memo. 2000-166


UNITED STATES TAX COURT


JOHN C. ARCHER AND NANCY M. ARCHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11587-98.                    Filed May 22, 2000.


Robert E. Reetz, Jr., Kenneth D. Owens, and Carleton A.
Davis, for petitioners.

Rosemary Schell, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in
petitioners' income tax of $23,188 for 1994 and a penalty of
$4,637.60 under section 6662(a) for substantial understatement of
tax.

After concessions, the issues for decision are:

1.   Whether petitioners may deduct $37,739 for 1994 which petitioners contend they paid to settle a threatened lawsuit.[1] We hold that they may not.

2.   Whether petitioners are liable under section 6662(a) for a penalty of $4,637.60 for 1994 for substantial understatement of income tax.  We hold that they are.

Section references are to the Internal Revenue Code in effect for 1994.  Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to John C. Archer.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioners

Petitioner lived in Liberty, Texas, and petitioner Nancy M. Archer lived in Austin, Texas, when they filed their petition. Petitioners were cash basis, calendar year taxpayers.  Petitioner is a lawyer who specializes in collecting delinquent taxes for Texas counties and districts.

B.   Petitioner's Law Firm

Parmer, Archer, Young & Steen, P.C. (PAYS), a professional service corporation, was incorporated before 1994 under the Texas Professional Corporation Act.  PAYS provided legal services to

---

[1]   Petitioners concede that they may not deduct $37,606 of the $75,345 that they deducted for settlement of a threatened lawsuit.

Texas counties, school districts, cities, and water districts relating to collection of delinquent taxes.

PAYS was an S corporation. Petitioner held 100 shares in PAYS, which was a 10-percent ownership interest. Petitioner's adjusted basis in his 100 shares was $92,039.

In 1994, petitioner became dissatisfied with PAYS' management and decided to open his own law office and represent certain PAYS clients. The officers of PAYS learned about petitioner's plan, discharged him from the firm, and threatened to sue him for tortious interference with PAYS' contracts with its clients.

C.    The Settlement Agreement

On December 23, 1994, petitioner and PAYS negotiated and settled their dispute. Their agreement had five pages. Petitioner and the remaining PAYS members initialed each page, and signed the agreement on page 5. The first two pages of the agreement (part 1) were entitled "AGREEMENT TO PURCHASE/SELL SHARES". The heading "ASSIGNMENT AND NON-COMPETITION" appears at the top center of the third, fourth, and fifth pages of the agreement (part 2). Centered beneath that title is "PAGE TWO" on the fourth page and "PAGE THREE" on the fifth page. In part 2, petitioner and PAYS resolved the threatened lawsuit related to petitioner's plan to take the Liberty County account with him.

The following chart lists the provisions in parts 1 and 2 of the agreement which benefit PAYS or petitioner:

| Provisions Which Benefit PAYS | Provisions Which Benefit Petitioner |
|---|---|
| Contained in part 1: | Contained in part 1: |
| 1. PAYS gets petitioner's 100 shares. (No value stated.) | 1. PAYS forgives petitioner's $12,500 debt to PAYS. |
| 2. Petitioner will pay the $25,000 deductible for any payment made for a claim against him under PAYS' professional lawyer's liability policy. (No value stated.) | 2. PAYS assumes petitioner's $37,000 debt to Henry Steen, Jr. and Gates Steen. |
| Contained in part 2: | 3. PAYS will try to obtain a release of petitioner's guarantee of the PAYS note to Chester Young, or will indemnify petitioner against claims arising from that guarantee. (No value stated.) |
| 1. Petitioner will not compete with PAYS for tax collection contracts, other than the two assigned to him, for a period of 2 years (petitioner's covenant not to compete). (No value stated.) | 4. PAYS will give petitioner three computers. (Stipulated value of $2,000.) |
| | 5. PAYS will indemnify against judgments arising out of a pending lawsuit unless petitioner made the statement which is the subject of the lawsuit. (No value stated.) |
| 2. Petitioner will make no claim for any part of legal fees earned for services provided to Liberty County before January 1, 1995 (petitioner's covenant not to sue). (No value stated.) | 6. PAYS gives petitioner an interest in the settlement of a certain lawsuit. (Stipulated value of $2,800.) |
| 3. Petitioner will indemnify PAYS and its shareholders and directors from any claims resulting from his departure and the contract assignments. (No value stated.) | 7. PAYS releases petitioner from liability as a guarantor of the firm's $100,000 line of credit. (No value stated.) |
| | Contained in parts 1 and 2: |
| 4. Petitioner will return all PAYS property not specifically given to him under the agreement. (No value stated.) | 1. PAYS assigns its collection contracts with Liberty County and Trinity County to petitioner. (No value stated.) |
| | 2. PAYS will not sue petitioner or Liberty County for cancelling or assigning the Liberty County contract (PAYS' covenant not to sue). (No value stated.) |

No specific items were given by one party to the agreement for any specific items given by the other party.

D.   Petitioners' Income Tax Return

Frank Melvin (Melvin), a certified public accountant (C.P.A.) licensed in Texas, prepared petitioners' 1994 income tax return.  Petitioners deducted $75,345 on their 1994 Schedule C, Profit or Loss From Business (Sole Proprietorship), for litigation settlement (i.e., PAYS' covenant not to sue).  On Schedule D, Capital Gains and Losses, they reported that they sold PAYS stock for $75,345, that their basis in that stock was $75,345, and that their net long-term capital gain or loss was zero.

OPINION

A.   Whether Petitioners Paid $37,739 to Settle a Threatened Lawsuit for 1994

1.   Contentions of the Parties

Petitioners contend that a taxpayer may deduct as a business expense settlement payments made to avoid litigation related to the taxpayer's business.  See Anchor Coupling Co. v. United States, 427 F.2d 429, 433 (7th Cir. 1970).  Petitioners contend that petitioners paid at least $37,739 to PAYS to settle PAYS' threatened lawsuit against petitioner (i.e., for PAYS' covenant not to sue).  Respondent contends that petitioners have not shown how much they paid to settle the threatened lawsuit.

As cash basis, calendar year taxpayers, petitioners may deduct an expense in the year in which the expense was paid in cash or its equivalent.  See Helvering v. Price, 309 U.S. 409,

413 (1940).  Petitioners did not pay any cash to settle the threatened lawsuit.  Thus, petitioners must prove how much they paid in 1994 in the equivalent of cash to settle the threatened lawsuit.  See Rule 142(a).

2.  Whether Petitioners Paid $37,739 in 1994 To Settle the Threatened Lawsuit

Petitioners contend that the amount that petitioner paid to settle the threatened lawsuit can be derived from the values stated in the agreement and stipulated values for some of the provisions of the agreement.[2]  We disagree.  PAYS benefitted from six provisions in the agreement.  There is no stated or stipulated value for any of those provisions.  Petitioner benefited from nine provisions in the agreement, five of which have a stated or stipulated value and four of which do not.  Petitioners calculate the value of PAYS' covenant not to sue (item 5 under consideration received by petitioner in the chart below) as follows:

| Consideration given by petitioner | Amount |
| --- | --- |
| 1. PAYS stock | $92,039 |

| Consideration received by petitioner | |
| --- | --- |
| 1. Forgiveness of debt to PAYS | 12,500 |
| 2. Release of debts to Henry Steen, Jr., and Gates Steen | 37,000 |

---

[2]  Respondent contends that the settlement consists of two separate agreements.  We disagree.  PAYS and petitioner prepared and executed the settlement at the same time.  They signed the settlement only at the end of page 5.  We doubt that they would have agreed to either part without agreeing to both parts.  We conclude that the settlement is one agreement.

| | |
|---|---|
| 3. Three computers | 2,000 |
| 4. 30 percent of the proceeds from | 2,800 |
| Archer v. Houseman | |
| 5. PAYS' covenant not to sue | 37,739 |
| (litigation settlement) | |
| Total | 92,039 |

For petitioners' calculation to be valid, petitioner's stock in PAYS must have a value of at least $92,039, and the following provisions in the agreement must have no value or values that benefit the two parties to the agreement equally: (1) Petitioner's agreement to pay the $25,000 deductible for professional liability claims payments, (2) petitioner's covenant not to compete, (3) petitioner's covenant not to sue, (4) petitioner's agreement to indemnify PAYS for claims due to his departure, (5) petitioner's agreement to return PAYS' property not specifically given to him, (6) PAYS' agreement to obtain release or indemnify petitioner with respect to the note to Chester Young, (7) PAYS' agreement to indemnify petitioner against judgments in a pending lawsuit, (8) PAYS' assignment of its collection contracts with Liberty and Trinity Counties to petitioner, and (9) PAYS' release of petitioner from liability for the $100,000 line of credit. Petitioners did not establish that these items have no value or have offsetting values. Thus, it is impossible to calculate the value of PAYS' covenant not to sue.[3]

---

[3] Petitioners contend that petitioner's stock was worth
(continued...)

Petitioners contend that the fact that PAYS and its shareholders did not hesitate to file suits against each other when a shareholder left the firm shows that PAYS' covenant not to sue had value.  We recognize that PAYS' covenant not to sue may well have had value.  However, petitioners have not given us a satisfactory basis to estimate its value.

We conclude that petitioners have failed to show that they may deduct $37,739, or any other amount, as a litigation expense.[4]

B.    Whether Petitioners Are Liable for the Accuracy-Related Penalty for Substantial Understatement Under Section 6662

Petitioners contend that they are not liable for the accuracy-related penalty under section 6662 because they properly relied on their accountant and because the transaction was complex.

A taxpayer may be liable for an accuracy-related penalty on a substantial understatement of tax.  See sec. 6662.  The understatement is reduced to the extent that it (1) is based on substantial authority, (2) is adequately disclosed on the return

---

[3](...continued)
$200,000 to $250,000 or that it was worth at least $92,039, the amount of their adjusted basis.  Regardless of the value of petitioner's PAYS stock, it would not establish the value of PAYS' covenant not to sue for the reasons given in the accompanying text.

[4]  Because of this conclusion, we need not decide, as petitioners contend, whether 1994 is the proper year to deduct the litigation expense.

or in a statement attached to the return and there is a reasonable basis for the tax treatment of that item, or (3) is due to reasonable cause and petitioners acted in good faith. See secs. 6662(d)(2)(B)(i) and (ii), 6664(c)(1); sec. 1.6664-4(c), Income Tax Regs. Petitioners do not contend that they have substantial authority for their positions or that they adequately disclosed their positions on their returns. They contend only that they had reasonable cause and acted in good faith.

Petitioners concede that they may not deduct as a bad debt loss $37,606 of the $75,345 they claimed as a litigation expense for 1994. We have concluded that they may not deduct any amount as a litigation expense for 1994.

Petitioners contend that they had reasonable cause and acted in good faith because they relied on their accountant and the transaction was complex. Petitioners point out that they are not required to question whether their accountant is competent, citing Streber v. Commissioner, 138 F.3d 216, 220 (5th Cir. 1998), revg. T.C. Memo. 1995-601, and Reser v. Commissioner, 112 F.3d 1258 (5th Cir. 1997), affg. in part and revg. in part (including on this issue) T.C. Memo. 1995-572.

To establish good faith reliance on the advice of a competent adviser, a taxpayer must show: (1) That he or she provided the return preparer with complete and accurate information, (2) that an incorrect return resulted from the

preparer's mistakes, and (3) that the taxpayer was relying in good faith on the advice of a competent return preparer.  See Westbrook v. Commissioner, 68 F.3d. 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Cramer v. Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th Cir. 1995).  Petitioner testified in general terms that he described the substance of the sale of the shares to Melvin, but petitioners have not shown that they provided Melvin with complete and accurate information or that the incorrect return resulted from Melvin's mistakes.  Melvin did not testify.

The taxpayers in Streber v. Commissioner, supra, were about 20 and 25 years old and lacked business experience when they each received an inheritance of more than $1 million.  They hired a lawyer to advise them of their potential tax liability.  They followed the advice of the lawyer.  Petitioner is not like the taxpayers in Streber because he is a lawyer, and he negotiated the agreement at issue.

The taxpayer in Reser v. Commissioner, supra, was not personally involved with the transaction which caused the deficiency.  See id. at 1268.  In contrast, petitioner personally negotiated the terms of the agreement in the instant case.  The tax issue in Reser was a complex basis computation for which the taxpayer had no special knowledge.  See id.  In contrast, the issue of how much the parties allocated to PAYS' covenant not to

sue is a question of fact.  In <u>Reser</u>, two C.P.A.'s from a national accounting firm (one of whom testified at trial) agreed that the taxpayers were entitled to the deduction they claimed. See <u>id.</u> at 1271.  In contrast, petitioners' C.P.A. did not testify in this case.

We conclude that petitioners are liable for the section 6662 penalty.  To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.