KING, Circuit Judge,
dissenting:
In reversing the judgment of the tax court, the majority errs on two levels. First, under the guise of a review only for clear error, the majority rejects the tax court’s determination that the appellants were liable for an addition to tax based upon their negligence pursuant to former § 6653 of the Internal Revenue Code. In so doing, the majority exceeds its authority as an appellate court by usurping the fact-finding function properly relegated to the-tax court. Second, the majority concludes that the tax court erred in holding-the appellants liable for an addition to tax based upon a substantial understatement of their tax liability because substantial authority within the meaning of former § 6661 of the Internal Revenue Code existed for the tax position taken by the appellants. In order to justify this conclusion, the majority adopts a construction of the substantial authority standard that fails to comport with the treasury regulations interpreting § 6661 and that strips the statute of much of its force as a deterrent of taxpayer misconduct. I respectfully dissent.
I. Addition to Tax for Negligence
The majority improperly holds that the tax court clearly erred in finding that the appellants acted negligently in declining to réport the joint venture income as a capital gain and that the appellants were therefore liable for negligence penalties pursuant to former § 6653(a) of the Internal Revenue Code. See 26 U.S.C.A. § 6653(a) (West 1989) (amended in 1989). Because the majority makes no mention-of the burden of proof applicable to the parties’ dispute oyer the negligence penalty, it is worth noting here that the Commissioner’s determination of negligence is presumed correct and that the taxpayer-therefore bears the burden of proving the absence of negligence. See Westbrook v. Commissioner, 68 F.3d 868, 880 (5th Cir. 1995); Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir.1990).
The majority concludes that the tax court erred in declining to accept the appellants’ contention that their failure to report the income from the joint venture on their 1985 tax returns did not constitute negligence because they made the decision based on the advice of counsel. In reaching this conclusion, the majority pays lip service to the fact that, as an appellate court, our review of the tax court’s finding of negligence is limited to a review for clear error. See Streber v. Commissioner, 138 F.3d at 219 (5th Cir.1998) (citing Sandvall, 898 F.2d at 459). It then proceeds to conduct a thinly veiled de novo review of the facts, reversing the tax court’s judgment regarding the negligence penalty merely because it reaches a different factual conclusion than that, reached by the tax court. The majority’s conclusion that “the overwhelming weight of the evidence ... supports the proposition [Edwin] Hunter did in fact tell the appellants that they should treat the joint venture income as a gift from Parker,” Streber, 138 F.3d at 220, simply cannot withstand scrutiny.
First, the majority points to the testimony of Tracy Streber, Teresa Deloney (by affidavit and deposition), Betty Berwick, and Steve Davis as establishing that Hunter told the appellants that they should treat the joint venture income as a gift. Credibility assessments regarding this testimony were exclusively within the province of the tax court, as it' was the trier of fact. See Durrett v. Commissioner, 71 F.3d 515, 517 (5th Cir. 1996). The tax court explicitly concluded that it “did not find [Tracy and Teresa] to be credible witnesses” and therefore accorded their testimony “little weight.” While it is not our place as an appellate court to strictly scrutinize the tax court’s credibility determi *225 nations, it is worth noting that the court had every reason to make the credibility assessments that it did in this case.
Tracy’s testimony at trial was exceptionally vague and riddled with lapses of memory. For example, when asked by the court what advice Hunter had given Tracy and her sister, Tracy replied as follows: “I don’t — well, there was this chalk talk thing, and there was — and ultimately it was, well it was a gift. And we — you know, that is — so your dad owes the tax.” When answering a number of related questions posed by the court regarding the sisters’ meeting with Hunter, Tracy responded that she could not remember or did not know. The tax court could properly decline to credit Tracy’s testimony. See id.; see also MacGuire v. Commissioner, 450 F.2d 1239, 1244 (5th Cir.1971) (‘“The Tax Court not only may, but should, base its findings on the testimony it believes to be true, rejecting after due consideration that which it believes is false.’ ” (quoting Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953))).
The tax court concluded that Teresa, whose affidavit and deposition were entered into evidence, had “failed to tell the truth” in “various important respects.” The court specifically concluded that Teresa had previously misrepresented her involvement in reporting her father’s alleged understatement of his tax liability to the IRS. In response to interrogatories sent to her in the discovery phase of the trial, Teresa made the following statement:
I never gave advice to the Internal Revenue Service about shortcomings in the income tax returns filed by Larry and Martha [Parker] for 1985, nor do I have personal knowledge that any relative or counsel did so.
When later asked in deposition whether she provided the IRS with any communication regarding her father’s tax liability, she stated that she did not remember making such a communication. When asked if she had heard of anyone else making such a communication, she stated that she “ha[d] heard” during the pretrial proceedings “[t]hat it was done.” When asked by whom, she responded “by myself and my husband through our attorney.” When asked in a later deposition session what this earlier statement meant, Teresa responded, “It means that all I have heard in these proceedings is that — that Steve and I were supposedly the informants, but I have no knowledge of who informed, when it was done. I did not do it. He did not do it.” A reward application bearing Teresa’s signature and containing information regarding her father’s tax liability was filed with the IRS and entered into evidence. Additionally, an IRS memorandum reciting that Teresa was in attendance at a meeting with an IRS special agent in 1986 at which she provided information relating to her father’s 1985 tax return was also entered into evidence. Based on its conclusion that Teresa had testified falsely about her involvement in informing on her father to the IRS, the tax court had every right to infer that Teresa had also testified falsely about the advice that she received from Hunter and her reliance on it. See Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir.1984) (concluding that the tax court could properly infer that the taxpayer had testified falsely about a particular matter based on the taxpayer’s false testimony regarding a related matter).
The majority also notes that two other witnesses — Berwick and Davis — indicated that Hunter felt that Tracy and Teresa could legally treat the joint venture income as a gift from their father and decline to report it as a capital gain. As noted earlier, the tax court had the exclusive authority, to make credibility assessments regarding this testimony. More importantly, however, none of the witnesses established that Tracy and Teresa provided Hunter with all of the information relevant to an informed determination of the appropriate tax treatment of the joint venture income.
In order to take advantage of the defense to negligence penalties provided by good-faith reliance on the advice of counsel, a taxpayer must prove that the advice of counsel allegedly relied upon was “based on knowledge of all the facts” relevant to the advice given. See Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir.1969), cited with approval in Headley v. Commissioner, *226 902 F.2d 380, 383-84 n. 8 (5th Cir.1990). The taxpayers did not meet this burden here.
Tracy testified at trial that she did not provide Hunter with any documents relating to the joint venture and that she could not remember whether anyone else provided Hunter with any such documents. Teresa’s affidavit states that she and Davis “provided Mr. Hunter numerous documents [they] be-liéved relevant to this situation and other legal matters [they] were discussing with him,” but does not specify the exact nature of those documents. Davis testified that Teresa provided Hunter with some documents, but was vague as to their contents. When asked what kind of documents Teresa provided' to Hunter, Davis stated, “She had, you know, documents how the deal — you know, wasn’t a lot of documents, but she did have some as far as the deal — land deal____” As to what Hunter was told at the meeting with the sisters, Tracy testified that she “[could] only speculate” about what she had told Hunter and that she “[could not] speak for [her] sister.” Such testimony* fails to establish that Hunter knew all of the facts relevant to a determination of whether the joint venture income constituted a gift and therefore fails to establish that Tracy and Teresa did not act negligently.
The majority next concludes that, in light of the fact* that Hunter assisted the appellants in reporting on Parker to the IRS, thereby subjecting them to heightened scrutiny regarding their treatment of the joint venture income, “it is hard to understand how the Tax Court could have concluded that Hunter would have advised the appellants to take any position other than the one they adopted in this matter.” Streber, 138 F.3d at 220. This analysis is problematic on two levels. First, the majority takes it upon itself to theorize about the cost-benefit analysis that the appellants conducted in weighing the cost of reporting to the IRS and thereby increasing their risks of an audit against the benefit of a potential cash reward for providing the IRS with what the majority acknowledges was information of “substantial value.” Id at 220 n. 9. Second, based on an assumption that Hunter provided the appellants with sound advice regarding the risks of heightened IRS scrutiny that would flow from reporting on Parker, the majority concludes that Hunter must have provided advice regarding the appropriate treatment of the joint-venture income that, at least in the view of the appellants, was so unsound that it constituted legal malpractice.[1]
The majority also concludes that the tax court erred in drawing a negative inference from the fact that Hunter did not testify at the trial. In support of this conclusion, the majority states that, unless a potential witness has information- “peculiarly within his knowledge,” a party should feel free not to produce the potential witness “ “without any apprehension’ that a court will draw a negative inference.” Streber, 138 F.3d at 222 (quoting McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir.1989), and John Henry Wigmore, Evidence § 287, at 202-03 (Chad-bourn rev.1979)). The legal authority that the majority cites for this proposition fails to bear it out.
First, McKay does not stand for the proposition that the trier of fact may draw a negative inference from a party’s failure to produce a witness only when that witness possesses information peculiarly within his knowledge. The sentence containing the passage quoted by the majority states the following: “Moreover, petitioner declined to testify and since the fact at issue was peculiarly within his knowledge, the court properly concluded his testimony would be unfavorable to him____” McKay, 886 F.2d at 1238. The most that one can glean from this passage is that the Ninth Circuit has concluded that a scenario in which a party declines to produce a witness to present testimony peculiarly within the witness’s knowledge constitutes one circumstance in which the fact-finder may properly infer that the witness’s testimony would be unfavorable to the party. In no sense does the Ninth Circuit’s lan *227 guage preclude the existence of other such circumstances.
Second, Wigmore does not support the evi-dentiary rule advocated by the majority. In the passage cited by the majority, Wigmore states the general rule regarding when the trier of fact may draw negative inferences from a party’s failure to produce a witness within his control as follows:
[Tjhere is a general limitation (depending for its application on the facts of each case) that the inference [that a witness would testify in a manner unfavorable to the party that declines to produce him] cannot fairly be drawn except from the nonpro-duction of witnesses whose testimony would be superior in respect to the fact to be proved.
Wigmore, supra, § 287, at 203. One can hardly doubt that the testimony of Hunter— the purveyor of the legal advice at issue here — regarding the substance of that advice would have been in some sense superior to that of the witnesses who testified regarding the matter. Indeed, given the vague and eonclusory nature of the testimony of the witnesses at trial regarding Hunter’s advice and Tracy’s substantial lapse of memory as to its substance, one might even conclude that the details of that advice were peculiarly within Hunter’s knowledge.
More importantly, however, in the same paragraph quoted by the majority, Wigmore goes on to say that the general limitation on the fact-finder’s authority to draw negative inferences from a party’s failure to produce a witness rests on “grounds of expense and inconvenience” and “should not be enforced with any strictness; otherwise it would become practically objectionable.” Id. In this case, the expense and inconvenience of placing Hunter on the witness stand would have been negligible. Not only was he available to the appellants, he was in the court room throughout the trial. Furthermore, the tax court found — and the appellants do not dispute — that the Tax Court Rules of Practice and Procedure would have allowed Hunter to testify without disqualification. See 26 U.S.C. foil. § 7453 R. 24(f).
The majority also contends that a conclusion that the tax court could properly draw a negative inference from Hunter’s failure to testify “would in essence require the attorney to testify in all cases involving an advice of counsel defense.” Streber, 138 F.3d at 222. This is simply not true. Allowing the tax court to draw such an inference does not imply that the testimony of counsel is necessary to establish a viable advice of counsel defense. It does not imply that the court must draw such an inference or that, when the court does draw such an inference, it is foreclosed from concluding that the other evidence in the record nonetheless establishes that the taxpayer reasonably relied on the advice of counsel.
In sum, given (1) the tax court’s exclusive power to make credibility assessments regarding the witnesses at trial, (2) the paucity of evidence regarding what information Hunter had when he gave the advice at issue here, and (3) the tax court’s discretion to draw a negative inference from Hunter’s failure to testify, the tax court had ample basis on this factual record for concluding that the appellants did not bear their burden of proving that they were shielded from liability for negligence by good-faith reliance on the advice of counsel. As an appellate court, our inquiry properly ends there.
II. Substantial Understatement
The majority next errs in concluding that the tax court abused its discretion in holding the appellants liable for a substantial understatement penalty pursuant to former § 6661 of the Internal Revenue Code. Section 6661, repealed after the tax years at issue in this case, provided for the imposition of a penalty based on a taxpayer’s substantial understatement of tax liability for a taxable year. See 26 U.S.C.A. § 6661(a) (West 1989) (repealed in 1989). The section provided that, for purposes of computing the penalty, the amount of the taxpayer’s understatement of tax liability is “reduced by that portion of the understatement which is attributable to ... the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment.” Id. § 6661(b)(2)(B)(i). The taxpayer bears the burden of proving the existence of substantial authority. See West-brook, 68 F.3d at 882.
*228 The majority concludes that, from a factual standpoint, substantial authority for a taxpayer’s position within the meaning of § 6661 exists unless ‘“there was a record upon which the Government could obtain a reversal under the clearly erroneous standard’” had the tax court accepted the taxpayer’s position. Streber, 138 F.3d at 223 (quoting Osteen v. Commissioner, 62 F.3d 356, 359 (11th Cir.1995)). This construction of the substantial authority standard contravenes § 6661’s interpretive regulations. Section 1.6661-3 of-the Treasury Regulations indicates that § 6661’s substantial authority standard does not contemplate substantial evidentiary authority. Rather, the regulation provides an exclusive list of potential sources of authority, all of which are legal sources, which indicates that § 6661 contemplates only substantial legal authority. Section 1.6661-3 provides in relevant part as follows:
Types of authority. In determining whether there is substantial authority ..., only the following will be. considered authority. Applicable provisions of the Internal Revenue Code and other statutory provisions; temporary and final regulations construing such statutes; court cases; administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and Congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill’s managers.
26 C.F.R. § 1.6661-3(b)(2) (1997) (emphasis added). Noticeably absent from this list of potential sources of authority is any mention of factual evidence favorable to the taxpayer’s position.
Furthermore, the majority’s construction of the substantial authority standard implies that, in many circumstances, if a taxpayer is able to survive summary judgment, he is shielded from liability for substantial understatement penalties because substantial authority — in the form of some evidence — supports his tax position.[2] Moreover, when a taxpayer’s entitlement to a particular tax benefit hinges upon facts that will be elucidated by witness testimony, the taxpayer need only lie about the facts that would entitle him to the benefit in order to shield himself from liability for a substantial understatement penalty resulting from his improperly claiming the benefit. In such a circumstance, the taxpayer’s testimony would constitute some evidence indicating his entitlement to the benefit, and, the majority opinion in this case notwithstanding, it is doubtful that we would be in a position on appeal to conclude that the trial court would have clearly erred had it credited the taxpayer’s testimony. Surely Congress did not intend to impose such a toothless penalty for substantial understatement of tax liability.[3]
The majority’s erroneous construction of the substantial authority standard is rendered even more unfortunate by the fact that it is entirely gratuitous. The majority independently concludes that the IRS abused its discretion by declining to waive the substantial understatement penalty pursuant to *229 § 6661(c) because the appellants relied in good faith on the advice of counsel in choosing to treat the joint venture income as a gift. As I indicated above in my discussion of the majority’s treatment of the tax court’s imposition of negligence penalties, the majority errs in this regard by making an independent assessment of the factual issue of whether the appellants truly acted in good-faith reliance on the advice of counsel. However, the majority’s conclusion that the appellants were entitled to waiver of the penalty provides an independent, albeit legally unsound, basis for its decision to reverse the tax court’s imposition of the substantial understatement penalty. Nevertheless, the majority proceeds to heap one legal error onto another by promulgating in dicta a construction of the substantial authority standard that fails to comport with the treasury regulations interpreting § 6661 and that robs the statute of much of its value as a deterrent of taxpayer misconduct. I therefore respectfully dissent.

. The appellants have filed a legal malpractice action against Hunter, the law firm where he is employed, and other attorneys related to Hunter’s alleged advice that they treat the joint venture income as a gift for tax purposes.

. It is true that "[a] finding is clearly erroneous when, although some evidence supports the decision, we are left with the definite and firm conviction that a mistake has been committed.’ ” United States v. Tello, 9 F.3d 1119, 1122 (5th Cir.1993) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). However, on numerous occasions, we have concluded that a factual finding is not clearly erroneous based on an inquiry that appears to begin and end with a determination that the record contains some evidence supporting the factual finding. See, e.g., United States v. Jobe, 101 F.3d 1046, 1066 (5th Cir.1996); Lewis v. NLRB, 750 F.2d 1266, 1278-79 (5th Cir.1985).

. It is worth noting that the majority's construction of the substantial authority standard also provides a disincentive for taxpayers to settle with the IRS in situations in which they are potentially liable for substantial understatement penalties. If the taxpayer is able to create a fact issue about which reasonable minds could differ regarding his entitlement to a particular tax benefit, he can avoid liability for substantial understatement penalties. In some circumstances, this heightened incentive may be sufficiently strong that it convinces the taxpayer to proceed to trial rather than settle the dispute.