LIGE B. AND GLENDA A. HOPCUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hopcus v. Commissioner
Docket No. 9830-84.
United States Tax Court
T.C. Memo 1988-181; 1988 Tax Ct. Memo LEXIS 210; 55 T.C.M. (CCH) 717; T.C.M. (RIA) 88181; April 28, 1988. Leda Williams and Darrell V. Rippy, for the petitioners. Gilbert T. Gembacz, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) *211 (redesignated sec. 7443A(b) by sec. 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180 and 181. [1]
Respondent determined a deficiency in petitioners' Federal income tax for 1982 in the amount of $ 11,260 together with additions to tax under section 6653(a)(1) in the amount of $ 563, under section 6653(a)(2) in the amount of 50 percent of the interest due on $ 7,324 and under section 6661(a) in the amount of $ 1,126. Petitioners resided at Simi Valley, California, when they timely filed their petition herein. This case involves two basic issues. As to the first, involving alleged contributions to the Universal Life Church, petitioners agreed to be bound by the "final unappealable" decisions in Burwell v. Commissioner,89 T.C. 580 (1987), on appeal (9th Cir., Dec. 16, 1987). Accordingly, we now consider only the disallowance by respondent of losses in the amount of $ 9,992 claimed by petitioners on Schedule F of *212 their return in connection with a horse breeding and boarding operation. [2] Petitioners contend that they entered into this activity for profit; respondent contends to the contrary. Some of the facts were stipulated and they are incorporated herein by reference. The issue in regard to the horse breeding and boarding question pertains mainly to petitioner Glenda A. Hopcus. References to petitioner henceforth shall be to her. Petitioner was employed full time as a group manager by American Telephone and Telegraph Company. In October of 1981, petitioners purchased residential property at 85 Wrangler Road in Simi Valley, California. The house and grounds were located in a planned equestrian community called Bridle Path. One of the covenants and restrictions of Bridle Path was that a barn was required in order to maintain a horse on the property. Bridle Path is situated close to 1,700 acres of a mountain park. Petitioner was interested in horses. She started taking riding lessons from Ed Sheets, a trainer, in Simi Valley, California. After six months of training she purchased *213 her own horse in 1978. Mr. Sheets trained her horse and at the same time, taught petitioner how to train. He also taught petitioner first aid for horses, how to give shots, how to assist in breeding, and to assist in foaling. Petitioner trained under Mr. Sheets about two and one half years. Thereafter, petitioner went to the Hall Ranch in Moorpark and was trained in the art of dressage. Lastly, petitioner took classes at the College of the Canyons in Newhall, California, which dealt with horse training and psychology. Petitioner hoped to board, train and breed horses herself. In October of 1981 petitioners entered into an agreement for the installation of a prefabricated four-stall barn on their property. The planned purchase price of the barn was $ 19,000 plus $ 915.80 tax. Subsequently, the transaction was changed into a lease transaction whereby petitioners made a refundable security deposit of $ 1,593, and agreed to rental payments of $ 568 per month for 60 months. Although the record is unclear, there was some nominal sum due by petitioners at the end of the lease term which, if paid, would result in title to the property vesting in them. The barn consisted of four *214 stalls, two were 12x12 feet with separate corrals, two were foaling stalls 12x16 feet each. In addition, there was a tack and feed room, a hot-walker (mechanical exerciser), and an arena for riding and training. Once the barn was completed in 1982, petitioner under the name of Shortacre Stables sought boarders. She ran advertising in local newspapers for boarding. She obtained only one boarder during 1982 for three months at an agreed $ 150 per month, but was paid only $ 400 in gross receipts. As a part of the boarding operations petitioner was responsible for providing water and feed to the horses, stall cleaning, and exercise. Petitioner, who worked full time, did most of the work herself, and Mr. Hopcus helped out as needed. Petitioners conducted no horse breeding activities in 1982. The operations of Shortacre Stables were handled in a business-like manner. Petitioner kept journal entries, had a separate bank account, sent statements for bills due and issued receipts for payment. The parties agree petitioners have substantiated that they incurred costs of $ 7,664 in this operation in 1982, of which $ 1,518 should be capitalized rather than deducted should this Court *215 find them to be in the trade or business of horse boarding and breeding. Petitioner was concerned at the lack of horse boarders. Since many of the residences in the Bridle Path community were built on hilly ground, not suitable for the construction of barns, she had hoped to attract much business from the community. She had originally estimated that she could earn $ 5,500 to $ 6,000 per year in the horse operation. She also looked into purchasing two registered Morgan horses of the old Lippitt blood lines. In January of 1983 she purchased a Morgan mare, Camaro of Shayna and a gelding, Shayna's Beau Brummell. These two horses had been neglected and required substantial training. As a result, petitioner was able to acquire the two horses for $ 1,000. It was her plan to breed the mare and show the gelding. Through this means she hoped to attract attention to her boarding and training operation. Unfortunately, she did not realize until after she purchased the Morgans that she was unable to afford the stud fees for the mare while she was still making rental payments on the barn. She was never able to breed the mare but she commenced training the horses and eventually sold them *216 for $ 5,000 in August of 1985. Shortly thereafter she purchased two pleasure horses for training with the hope she would be able to sell them. Petitioner boarded horses for seven months during 1983 and also had boarders during 1984. Petitioners must prove that the Shortacre Stables expenses are properly deductible under either section 162 or 212. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). For such expenses to be allowed as a deduction under either section, petitioners must establish that the activity was engaged in for profit. Boyer v. Commissioner,69 T.C. 521, 536 (1977); Benz v. Commissioner,63 T.C. 375, 382 (1974). Whether an activity is engaged in for profit turns on whether the taxpayer has a bona fide objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 643 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner,72 T.C. 649, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). The taxpayer's objective is *217 a question of fact to be determined from all facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979). The burden of proof is on the taxpayer, Golanty v. Commissioner, supra at 426, with greater weight given to objective facts that to the taxpayer's mere statements of intent. Engdahl v. Commissioner, supra at 666; sec. 1.183-2(a), Income Tax Regs.
The regulations promulgated under section 183 set forth some of the profit-motive requirements of sections 162 and 212, and courts have considered the factors contained in section 1.183-2(b), Income Tax Regs., in making the requisite profit-motive analysis under these sections. Brannen v. Commissioner,722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982). Section 1.183-2(b), Income Tax Regs., lists the following nine factors which should normally be taken into account in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation *218 that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. These factors are not exclusive and are to be applied according to the unique facts of each case. Sec. 1.183-2(b), Income Tax Regs. Accordingly, no one factor, nor a majority of the nine factors, need be considered determinative. Golanty v. Commissioner,supra at 426-427. Our determination must be based upon the record as a whole. A review of the entire record in this case persuades us that petitioner has met her burden of proving that her horse operation was engaged in for profit. In arriving at this conclusion we note that petitioner went about her activities in a business-like manner. She was trained in the art of riding, in horse training and more advanced dressage. She believed that there was a need in her community for boarding stables. She maintained *219 separate books and records and a bank account for the horse operation. She advertised for boarders. Had petitioner been able to utilize three of her four stalls for boarding (one was used by her own horse), she would have realized $ 5,400 per year at the rate of $ 150 per month. Had her activities expanded to training, as she had envisaged, her income would have been greater. We note that she did sell the two Morgans at a profit some two and a half years after she purchased them. We also have considered the elements of pleasure and recreation to petitioner from this activity, and this factor has not dissuaded us in our conclusion. It is clear that the activity of breeding, raising, and showing horses for sale may constitute an activity engaged in for profit. Commissioner v. Widner,33 F.2d 833 (3d Cir. 1929), affg. 8 B.T.A. 651 (1927). Moreover, as we stated in Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967) -- the presence of losses in the formative years of a business, particularly one involving the breeding of horses, is not *220 inconsistent with an intention to achieve a later profitable level of operation, bearing in mind, however, that the goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years. Petitioner entered into the horse operation in 1981 with a bona fide objective of making a profit. Dreicer v. Commissioner,78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). She continued the operation during the taxable year 1982 with the same profit objective.[3] Accordingly, she is entitled to deduct the expenses she paid in connection with horse boarding, subject to the parties' stipulation as to substantiation and capitalization. Given the agreement to be bound on the Universal Life Church issue and our disposition herein *221 of the Schedule F issue, When the decision in Burwell becomes final, a decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The portion of the deficiency attributable to the disallowance of this issue is $ 3,936. ↩
3. We have considered petitioner's activities in years subsequent to 1982 only for the limited purpose of obtaining an overview of petitioner's program. This opinion does not in any way hold that petitioner had the requisite profit objective in any year after 1982. ↩