United States Court of Appeals,

Eleventh Circuit.

No. 94-2371.

Harry E. OSTEEN and Gail M. Osteen, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Aug. 25, 1995.

Appeal from a Decision of the United States Tax Court. (No. 17391-92), Daniel J. Dinan, Judge.

Before BLACK and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

Harry and Gail Osteen (taxpayers) appeal the United States Tax Court's decision disallowing certain tax deductions attributable to their farming and horse breeding operation on the grounds that this activity was not engaged in for profit and assessing tax deficiencies and penalties for a substantial tax understatement.

We hold that the Tax Court's factual findings that the Osteens lacked a profit objective are not clearly erroneous and affirm its decision on that issue. We reverse the Tax Court, however, on its assessment of the understatement penalty because there was substantial authority for the taxpayers' position.

The facts of this case are discussed in detail in the Tax Court's memorandum opinion, T.C.Memo. 1993-519, 66 T.C.M. (CCH) 1237, 1993 WL 460546 (1993), and will not be repeated here. During the years at issue, Harry Osteen was employed full-time as a bank executive. His wife, Gail Osteen, was a full-time registered nurse. The Osteens became interested in breeding and raising

Percheron horses in Florida. Percherons are a breed of large draft horses that originally were bred for moving or towing heavy objects before the advent of tractors. There were no Percheron horse breeders nor was there an established market for Percherons in Florida at the time. The Osteens' intent was to breed the horses, train them by showing them and using them to operate a horse-powered farm, and then to sell the horses. For several consecutive years, the Osteens generated losses from the horse breeding activity.

### Profit Objective

A taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in connection with the operation of the business. I.R.C. § 162. An activity constitutes a "trade or business" within the meaning of section 162 if the taxpayer's actual and honest objective is to realize a profit. *Dreicer v. Commissioner,* 78 T.C. 642, 645, 1982 WL 11080 (1982), *aff'd* 702 F.2d 1205 (D.C.Cir.1983). The courts have relied on factors set forth in section 183 in making the requisite profit motive analysis under section 162. *Brannen v. Commissioner,* 722 F.2d 695, 704 (11th Cir.1984).

Section 183 specifically precludes deductions for activities "not engaged in for profit," such as pursuing hobbies or generating losses to shelter unrelated income. I.R.C. § 183(a); S.Rep. No. 552, 91st Cong., 1st Sess. (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 2133 (legislative history of § 183). Although the taxpayer's expectation of profit does not have to be reasonable, objective facts and circumstances must indicate that the taxpayer's intent

was to make a profit. A taxpayer's subjective statements of intent to make a profit are not sufficient. Treas.Reg. § 1.183-2(a) (1972). The regulations list nine factors to guide courts in determining whether an activity is engaged in for profit. These are not exclusive considerations, however, and no single factor or mathematical preponderance of factors is determinative. Treas.Reg. § 1.183-2(b) (1972).

In an opinion in which the Tax Court comprehensively analyzed the objective facts and circumstances of this case against the backdrop of each of the relevant factors, the court concluded that the Osteens did not engage in their horse breeding activity with an actual and honest objective of making a profit. This is a factual finding of the Tax Court due to be affirmed unless clearly erroneous. *Mayrath v. Commissioner,* 357 F.2d 209, 212-13 (5th Cir.1966); *Faulconer v. Commissioner,* 748 F.2d 890, 895 (4th Cir.1984).

A review of the record reveals that the Tax Court properly followed the nine factors listed in the regulations, viewed all facts and circumstances of the case, and was not clearly erroneous in determining that the Osteens engaged in the Percheron breeding business without a bona fide profit motive. The Tax Court relied on facts such as the taxpayers' inexperience in breeding Percheron horses and their failure to hire experienced assistants or bring in experienced partners, the lack of any profitability assessment of breeding Percherons in Florida, the limited time spent managing the operation, the string of consistent losses, and the significant income Osteen earned as a bank executive which allowed him to

tolerate such losses.

*Substantial Understatement Penalty*

The Osteens appeal the Tax Court's assessment of section 6661 understatement penalties. The Osteens do not dispute that their tax understatements for the two years in question met the definition of "substantial understatements" under this provision. The Osteens contend, however, that they had substantial authority to believe they could claim the farming and horse breeding losses, an exception to the imposition of understatement penalties.

26 U.S.C. § 6661, applicable during the years at issue, provided that:

> (a) Addition to tax.—If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.

For our purposes, section 6661(b)(2)(A) defines the "understatement" as the excess of:

> (i) the amount of the tax required to be shown on the return for the taxable year, over

> (ii) the amount of the tax imposed which is shown on the return....

The understatement, for the purposes of imposing the addition, *shall* be reduced "by that portion of the understatement which is attributable to [ ]the tax treatment of any item by the taxpayer if there is or was *substantial authority* for such treatment...." Section 6661(b)(2)(B)(i) (emphasis added).

The application of a substantial authority test is confusing in a case of this kind. If the horse breeding enterprise was carried on for profit, all of the deductions claimed by the Osteens

would be allowed. There is no authority to the contrary. If the enterprise was not for profit, none of the deductions would be allowed. There is no authority to the contrary. Nobody argues, however, not even the Government, that because the taxpayers lose on the factual issue, they also must lose on what would seem to be a legal issue.

The Tax Court in this case, as it seems to do in most of the cases, gives little explanation as to why there is substantial authority in one case, but not in another: "Based on the discussion above, we are convinced that there was not substantial authority for petitioners' position." Order at 15, 1993 WL 460546. *Cf. Harston v. Commissioner,* T.C.Memo. 1990-538, 60 T.C.M. (CCH) 1008, 1990 WL 154693 (1990) ("Although [the taxpayers] were not successful enough to show that they were entitled to the [§ 183] losses claimed, petitioners have convinced us that they had substantial authority for their position.")

There are no court decisions that give us guidance, and the regulations themselves, although speaking in terms of a test, are unsatisfactory in application to an all or nothing case of this kind.

If the Tax Court was deciding that there was no substantial authority because of the weakness of the taxpayers' *evidence* to establish a profit motive, we reverse because a review of the record reveals there was evidence both ways. In our judgment, under the clearly erroneous standard of review, the Tax Court would be due to be affirmed even if it had decided this case for the taxpayers. With that state of the record, there is substantial

authority from a factual standpoint for the taxpayer's position. Only if there was a record upon which the Government could obtain a reversal under the clearly erroneous standard could it be argued that from an evidentiary standpoint, there was not substantial authority for the taxpayer's position.

If the Tax Court was deciding there was not substantial *legal* authority for the deductions, we reverse because of the plethora of cases in which the Tax Court has found a profit motive in the horse breeding activities of taxpayers that were similar to those at hand. *E.g., Engdahl v. Commissioner,* 72 T.C. 659, 1979 WL 3705 (1979) (profit motive found; taxpayer had businesslike operation, consulted experts, kept quarterly records, showed horses, and did physical labor and menial chores); *Holbrook v. Commissioner,* T.C.Memo. 1993-383, 66 T.C.M. (CCH) 484, 1993 WL 325083 (1993) (husband and wife engaged in horse breeding for profit; activities conducted in businesslike manner; wife kept detailed records while husband developed expertise in horse breeding); *Scheidt v. Commissioner,* T.C.Memo. 1992-9, 63 T.C.M. (CCH) 1726, 1992 WL 810 (1992) (same effect for farm owner's stallion breeding syndicate); *Stephens v. Commissioner,* T.C.Memo. 1990-376, 60 T.C.M. (CCH) 197, 1990 WL 102239 (1990) (businesslike operation showed profit motive in horse breeding operation despite consistent losses caused by death of horses and poor economic conditions in industry); *Mary v. Commissioner,* T.C.Memo. 1989-118, 56 T.C.M. (CCH) 1515, 1989 WL 25031 (1989) (losses allowed for physician engaged in horse breeding/racing activity; taxpayer followed expert advice to increase revenues and decrease costs and devoted many hours towards

gaining personal expertise); *Eisenman v. Commissioner,* T.C.Memo. 1988-467, 56 T.C.M. (CCH) 330, 1988 WL 98369 (1988) (profit motive found; taxpayer had businesslike operation, consulted experts, kept quarterly records, showed horses, and did physical labor and menial chores); *Hopcus v. Commissioner,* T.C.Memo. 1988-181, 55 T.C.M. (CCH) 717, 1988 WL 39088 (1988) (deductions for horse breeding and boarding operation allowed for taxpayer who was employed full time by telephone company; operation was handled in businesslike manner); *Seebold v. Commissioner,* T.C.Memo. 1988–183, 55 T.C.M. (CCH) 723, 1988 WL 39086 (1988) (deduction allowed for losses from horse farming activity; taxpayers kept adequate records, discontinued unprofitable branch of operations, and developed expertise); *Harvey v. Commissioner,* T.C.Memo. 1988-13, 54 T.C.M. (CCH) 1508, 1988 WL 667 (1988) (husband and wife engaged in horse breeding for profit; activities conducted in businesslike manner; wife kept detailed records while husband developed expertise in horse breeding); *Snyder v. Commissioner,* T.C.Memo. 1987-539, 54 T.C.M. (CCH) 953, 1987 WL 49151 (1987) (profit objective found for physicians engaged in horse breeding, training, showing and selling operation even though consistently lost money); *Cronhardt v. Commissioner,* T.C.Memo. 1986-399, 52 T.C.M. (CCH) 287, 1986 WL 21609 (1986) (retiree allowed horse ranch losses; pre-opening efforts to gain experience, business-like operations and substantial time and effort expended showed profit motive despite initial losses and large drop in income); *Yancy v. Commissioner,* T.C.Memo. 1984–431, 48 T.C.M. (CCH) 872, 1984 WL 15080 (1984) (even though taxpayers lost money every year they

remained in business, they had actual and honest objective of making profit; business was not hobby, was financed from current wages and household did not use horses for personal pleasure in riding or at horse shows); *Ellis v. Commissioner,* T.C.Memo. 1984-50, 47 T.C.M. (CCH) 991, 1984 WL 15415 (1984) (businesslike operation showed profit motive in horse breeding operation despite consistent losses caused by death of horses and poor economic conditions in industry); *Fields v. Commissioner,* T.C.Memo. 1981-550 42 T.C.M. (CCH) 1220, 1981 WL 10938 (1979) (taxpayer's profit objective shown in cattle breeding/farming operation through expectation of gain and working on farm most weekends); *Appley v. Commissioner,* T.C.Memo. 1979-433, 39 T.C.M. (CCH) 386, 1979 WL 3478 (1979) (bona fide expectation of profit found for horse breeding and raising activities although corporation continually operated at loss for many years).

Although it can be properly argued that those cases are distinguishable from the case at hand, as well they are because the ultimate facts were found for the taxpayer rather than against the taxpayer as in this case, they are not so dissimilar that they must be discarded as providing no substantial authority for the tax returns filed in this case.

As a bottom line, we find little distinction between this case and the Tax Court case of *Harston.* The imposition of additions to the tax under § 6661 must turn on some analysis other than the conclusory decision of the Tax Court. The Tax Court should articulate some consistent and workable test to justify the imposition of additions in all or nothing situations of this kind,

otherwise the imposition of the addition is left to the educated reaction of the particular Tax Court judge hearing the case.

We affirm the Tax Court's finding of tax deficiencies for lack of a profit motive, but we reverse the Tax Court's imposition of a penalty for substantial understatement.

AFFIRMED IN PART, REVERSED IN PART.