T.C. Memo. 2001-68

UNITED STATES TAX COURT

ANDRIS ZARINS AND ZIGRIDA A. ZARINS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15570-98.                    Filed March 21, 2001.

Andris Zarins, pro se.

Linda R. Averbeck, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined deficiencies in
petitioners' Federal income taxes of $7,952 for 1994 and $4,788
for 1995.

The issues for decision are:

1.  Whether petitioners operated their tree farm activity
for profit in 1994 and 1995.  We hold that they did not.

2.    Whether the limitation on the time to assess tax for 1994 or 1995 expired before respondent issued the notice of deficiency.  We hold that it did not.

References to petitioner are to Andris Zarins.  Section references are to the Internal Revenue Code in effect during the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioners

Petitioners were married and filed joint returns for 1994 and 1995.  They lived in Ostrander, Ohio, during the years in issue and when they filed their petition.

Petitioners' parents owned a farm on which they raised cattle.  They also grew trees, of which they sold about 100-200 per year for 3 or 4 years.  Petitioner worked on the farm when he was young, and he attended several farm seminars with his father over the years.  Petitioner took business and economics courses in college and received an engineering degree before the years in issue.

Petitioners worked for the State of Ohio during the years in issue.  Petitioner was an engineer and his wife, Zigrida Zarins, was a computer manager.  Petitioner retired in 1997.

B.   Petitioners' Tree Farm

    1.   Starting the Tree Farm

Sometime before 1979, petitioners bought an 85-acre farm for $78,300.  Much of the farm was covered with trees, including hawthorns, walnuts, and oaks.  Petitioners lived in a trailer while they built a house on the farm.  They began living in the house around 1984.  Petitioner removed large amounts of brush and thorns and cultivated about 40 acres of the land by himself.

Around 1990, petitioners began to plant evergreen trees on their land.  Petitioner had planted about 2,000 seedlings by the end of 1993.  He planted about 1,000 trees in 1993, but most of them died in a severe drought that year.

Petitioner spent about 15 to 20 hours per week on this activity in 1994 and 1995.  He spent most of that time in 1994 building an irrigation pond and dam, for which he paid contractors $10,403 in 1994.  The pond provided water for a pumping system that could reach about 1,000 feet from the pond. He did not plant many trees in 1994 because he built the irrigation pond.  He was involved in time-consuming litigation over the pond with the Ohio Department of Natural Resources and a neighboring hunting club in 1995 and 1996.

In 1994 and 1995, petitioner bought gravel to build an access road on the farm.  Petitioners used their own equipment to build the road.  Petitioner bought equipment such as a compressor

and pump, mulch sweeper, generator, and chain saw in 1994 and 1995. However, petitioners had no equipment to ball the roots of and remove large trees.

Petitioners did not sell many trees in 1994 and 1995. Petitioners promoted tree sales in 1994 and 1995 by word of mouth, mostly to their relatives. In 1994 and 1995, petitioners sold trees to relatives (who helped dig the trees) and to three other customers for $20 per tree. In 1997, petitioners sold a number of trees not specified in the record for which they received payment in 1998. Petitioners' farm was visible from the road, but they did not have a sign for it.

Petitioner had planted about 3,000 to 3,500 trees by the end of 1995, and about 5,000 by March 2000. He did not keep records of the number of trees he planted.

2. Petitioners' Business Records and Business Plan

Petitioners did not have a separate bank account for their tree farm. Petitioner kept records of expenses and income for income tax purposes. He put expense receipts in separate files by category. He did not maintain any other books and records for their tree farm during the years in issue. Petitioners did not have a budget, did not make income or profit projections, and did not prepare a cost analysis for the tree farm. At a time not specified in the record, petitioners projected that they would sell 200 to 300 trees per year by around 1998 or 1999.

Petitioner did not seek expert advice about how to operate a tree farm for profit. Sometime before 1990, he asked neighbors who had botany degrees for advice on how to grow trees. Petitioner attended several agricultural seminars: a fish raising seminar in 1992, evergreen seminars in 1995 and 1997, a tree pruning seminar in 1997, and a nursery short course at Ohio State University in 1998.

Petitioners earned an unspecified amount of income from 1984 or 1985 to 1990 by allowing people to use their land to hunt and to practice for competitions with their dogs. Petitioners also tried to grow strawberries and grapes on their land and to raise fish.

C.   Petitioners' Tax Returns

Petitioners reported on Schedules F, Profit or Loss From Farming, attached to their tax returns for 1993 to 1998 that they operated a tree farm. Petitioners reported the following amounts of nonfarm income (i.e., wages, pension, interest, and taxable

income tax refunds) on their income tax returns filed for 1993
through 1998:

| Year | Wages | Pension | Nonfarm Income |
|------|-------|---------|----------------|
| 1993 | $ 95,578 | | $ 96,065 |
| 1994 | 101,750 | | 102,222 |
| 1995 | 108,877 | | 110,432 |
| 1996 | 118,377 | | 119,374 |
| 1997 | 102,510 | $22,836 | 125,954 |
| 1998 | 63,783 | 39,810 | 102,587 |

Petitioners reported the following amounts of taxable
income, expenses, and losses from their tree farm on their tax
returns for tax years 1993 to 1998:

| Year | Income | Expenses | Profit & (Loss) |
|------|--------|----------|-----------------|
| 1993 | $   275 | $ 9,506 | ($ 9,231) |
| 1994 | 320 | 28,400 | ( 28,080) |
| 1995 | 360 | 17,059 | ( 16,699) |
| 1996 | 0 | 13,891 | ( 13,891) |
| 1997 | 0 | 14,870 | ( 14,870) |
| 1998 | 4,270 | 4,069 | 201 |

Petitioners deducted the following amounts of farm expenses for tax years 1993 to 1998:

|  | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 |
|---|---|---|---|---|---|---|
| Seeds and plants | 132 | 354 | 423 | 1,320 | 638 | -- |
| Fertilizers | 352 | -- | -- | 19 | 2 | -- |
| Labor | -- | 80 | 150 | -- | -- | -- |
| Custom hire (machine work) | 613 | 10,721 | 1,107 | -- | -- | -- |
| Advertising | -- | -- | -- | -- | -- | 688 |
| Depreciation[1] | 3,331 | 3,550 | 3,243 | 2,268 | 718 | 483 |
| Car and truck | 896 | 870 | 1,200 | 1,307 | 1,242 | 383 |
| Mortgage interest | -- | 3,955 | 3,556 | 3,533 | 4,030 | -- |
| Gasoline | 1,456 | 2,595 | 1,844 | 1,781 | 1,359 | 709 |
| Repairs and maintenance | -- | 3,325 | 963 | 133 | 215 | 1,532 |
| Insurance | 362 | 388 | 429 | 451 | 916 | -- |
| Supplies | 1,531 | 1,756 | 3,235 | 1,149 | 4,427 | 274 |
| Taxes | 433 | 351 | 390 | 459 | 487 | -- |
| Utilities | 400 | 450 | 520 | 560 | 560 | -- |
| Machine parts | -- | -- | -- | 905 | -- | -- |
| Legal fee | -- | -- | -- | 40 | -- | -- |

[1] Petitioners depreciated a truck, a mulch sweeper, a generator, a compressor, a pump, and chain saws.

Petitioners timely filed joint Federal income tax returns for 1994 and 1995.  In November 1997, they signed Form 872, Consent to Extend the Time to Assess Tax, extending the period to assess tax for 1994 to June 30, 1999.

Respondent sent a notice of deficiency to petitioners on June 23, 1998, in which respondent determined that petitioners' tree farm was not operated for profit in 1994 or 1995.

OPINION

A.    Whether Petitioners Operated Their Tree Farm for Profit

The first issue for decision is whether petitioners operated their tree farm for profit in 1994 and 1995.  A taxpayer conducts an activity for profit if he or she does so with an actual and honest profit objective.  See Osteen v. Commissioner, 62 F.3d 356, 358 (11th Cir. 1995), affg. in part and revg. on other issues T.C. Memo. 1993-519; Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).  In deciding whether petitioners operated their tree farm for profit, we consider the following nine nonexclusive factors:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying

on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. See sec. 1.183-2(b), Income Tax Regs. No single factor controls. See Osteen v. Commissioner, supra at 358; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.

B.    Application of the Factors

    1.    Manner in Which the Taxpayer Conducts the Activity

Maintaining complete and accurate books and records, conducting the activity in a manner substantially similar to comparable businesses which are profitable, and making changes in operations to adopt new techniques or abandon unprofitable methods suggest that a taxpayer conducted an activity for profit. See Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

There is no evidence establishing that petitioner had a business plan. Petitioner wanted to sell evergreen trees and some of the trees that were growing indigenously on the land to nurseries and to individuals, and he knew that he could not sell the trees he planted for 10 years. However, the fact that he planted trees without keeping records of the number planted and

that he had no specific concept for operating a profitable tree farm shows that he did not have a business plan.

Petitioners contend in their brief that they planned to plant about 500-1000 seedlings each year and to sell 300-1000 trees for $9,000-$30,000 per year around years 10 to 12. However, statements in a brief are not evidence. See Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992); Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988).

Petitioners contend that petitioner made income projections for the tree farm. However, we have not so found because petitioners offered no evidence to support that contention.

Petitioner kept records of income and expenses for his tree farm to substantiate the deductions petitioners claimed on their 1994 and 1995 returns. These records do not establish that their tree farm had profit potential.

Petitioners contend that they tried to make their tree farm profitable without spending large amounts of money other than for the pond. However, they offered no evidence of the amount of expenses or sales they expected to have. There is no evidence in the record showing that enough of petitioners' trees will be available for sale to enable them to make a profit.

Petitioners contend that they made numerous changes in their operations to improve their profit potential. We disagree.

Petitioners offered no evidence that they changed their operations.

This factor favors respondent.

2. <u>The Expertise of the Taxpayers or Their Advisers</u>

Efforts to gain experience, a willingness to follow expert advice, and preparation for an activity by extensive study of its practices may indicate that a taxpayer has a profit objective. See sec. 1.183-2(b)(2), Income Tax Regs.  A taxpayer's failure to obtain expertise in the economics of an activity indicates that he or she lacks a profit objective.  See <u>Burger v. Commissioner</u>, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523; <u>Golanty v. Commissioner</u>, 72 T.C. 411, 432 (1979).

Petitioner contends that he had the necessary expertise to operate a profitable tree farm and that he learned the basics from his parents.  However, petitioner did not specify how he was involved in his parents' tree farming activity.

Petitioner contends that he sometimes sought advice from his botanist neighbors about growing trees and that he attended an evergreen seminar in 1995.  However, petitioners did not show that they had expertise relating to the tree farming business, or seek expert advice on how to operate their farm for profit.

This factor favors respondent.

3.  Taxpayer's Time and Effort

The fact that a taxpayer devotes much time and effort to an activity may indicate that he or she has a profit objective.  See sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner was employed full-time as an engineer in 1994 and 1995.  He worked 15 to 20 hours a week in 1994 and 1995 on the tree farm.  However, much of the time petitioner spent working on the tree farm in those years was not directly related to raising or selling trees.  He built a pond in 1994, he built an access road in 1994 and 1995, and he was engaged in litigation relating to the pond in 1995.  Petitioner failed to show to what extent the pond and road were directly related to the tree farm.  Petitioner testified that the pond supported irrigation up to about 1,000 feet from the pond, but he did not show how many of his trees were within 1,000 feet of the pond.  This factor favors respondent.

4.  Expectation That Property Used in the Activity Will Appreciate in Value

A taxpayer may intend to make an overall profit when appreciation in the value of assets used in the activity is realized.  See sec. 1.183-2(b)(4), Income Tax Regs.  There is an overall profit if net earnings and appreciation are enough to recoup losses sustained in prior years.  See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Petitioners contend that their land is well located for future development. They contend that, at the time of trial, the farm was worth more than $750,000. Petitioner testified that sometime in the future he probably would sell some of the farm land for commercial development to realize the appreciation that has occurred in the 20 years petitioners have owned it. His testimony did not convince us that, either when he started the tree farm or during the years in issue, he considered or expected that future appreciation of the farm land would offset the cumulative losses from the farm.

The record is silent as to the fair market value of petitioners' land when they started the tree farm. Thus, we can only compare the fair market value of petitioners' 85 acres in 2000 to the $78,300 petitioners paid for it sometime before 1979. Such a comparison improperly includes appreciation in the value of petitioners' farm that occurred before petitioners began their tree farm activity in 1990. See Pearson v. Commissioner, T.C. Memo. 1996-66.

Petitioners contend that their trees will increase in value. However, petitioners did not show how much the value of their trees will appreciate or when tree appreciation plus other tree income will exceed their accumulated losses.

This factor favors respondent.

5. Taxpayer's Success in Other Activities

The fact that a taxpayer previously engaged in similar activities and made them profitable may show that the taxpayer has a profit objective. See sec. 1.183-2(b)(5), Income Tax Regs. The record does not show how petitioner was involved in his parents' tree farm or if they operated it successfully. Thus, petitioner has not established that he successfully engaged in any other activity similar to the tree farm. This factor favors respondent.

6. Taxpayer's History of Income or Losses

A history of substantial losses may indicate that the taxpayer did not conduct the activity for profit. See Golanty v. Commissioner, supra at 427; sec. 1.183-2(b)(6), Income Tax Regs. A taxpayer may have a profit objective even when the activity has a history of losses, see Bessenyey v. Commissioner, supra at 274, because losses during the initial stage of an activity do not necessarily indicate that the activity was not conducted for profit, see Engdahl v. Commissioner, 72 T.C. at 669; sec. 1.183-2(b)(6), Income Tax Regs.

Petitioners contend that it will take 10-14 years for the tree farm to be profitable. The years at issue are years 5 and 6 of petitioners' activity. Because petitioners' losses were incurred during the startup period of their activity, this factor

is neutral.  See <u>Strickland v. Commissioner</u>, T.C. Memo. 2000-309; <u>Davis v. Commissioner</u>, T.C. Memo. 2000-101.

### 7.    Amount of Occasional Profits, If Any

The amount of any occasional profits the taxpayer earned from the activity may show that the taxpayer had a profit objective.  See sec. 1.183-2(b)(7), Income Tax Regs. Petitioners' tree farm generated no profit during the years in issue and showed a small profit in 1998.  This factor is neutral.

### 8.    Financial Status of the Taxpayer

The receipt of a substantial amount of income from sources other than the activity, especially if the losses from the activity generate large tax benefits, may indicate that the taxpayer does not intend to conduct the activity for profit.  See sec. 1.183-2(b)(8), Income Tax Regs.

Petitioners had $102,222 in unrelated gross income for 1994 and $110,432 for 1995, and claimed Schedule F losses of $28,080 and $16,699, respectively.  Although petitioners had income against which they deducted their losses, they did not realize substantial tax benefits from the tree farm activity.  Of their losses, depreciation accounted for only 12.6 percent in 1994 and 19.4 percent in 1995; most of their losses were from cash outlays.  See <u>Davis v. Commissioner</u>, <u>supra</u> (the fact that the taxpayers spent 40-50 percent of their income on the activity and that depreciation accounted for only 9-17.5 percent of their

losses indicated that the activity was not a hobby). Petitioners' financial status does not affect our analysis. See Callahan v. Commissioner, T.C. Memo. 1996-65, affd. 111 F.3d 892 (5th Cir. 1997). Consequently, this factor is neutral.

9.    Elements of Personal Pleasure

The presence of recreational or personal motives in conducting an activity may indicate that the taxpayer is not conducting the activity for profit. See sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner worked hard planting trees, removing thorns and brush, and building the pond and access road. We do not know whether he enjoyed doing that work. Petitioners' residence is located on their land, and they have not shown that their tree farm activity did not benefit their residence and their enjoyment of their property. See Estate of Dickerson v. Commissioner, T.C. Memo. 1997-165 (Christmas tree farm activity not conducted for profit; the trees provided personal pleasure because they were located near the taxpayers' residence). Petitioners have not shown that they lacked recreational or personal motives for engaging in the tree activity. This factor is neutral.

10. Conclusion

We conclude that petitioners did not operate their tree farm for profit in 1994 and 1995.[1]

C. Whether the Statute of Limitations Bars Assessment of Tax for 1994 and 1995

Petitioners contend that the time to assess tax for 1994 and 1995 expired because the IRS had not made an assessment by June 30, 1999. We disagree. Generally, the Commissioner must assess tax within 3 years after the due date of a timely filed return. See sec. 6501(a). Respondent bears the burden of proving that an exception to the 3-year limit on the time to assess tax applies if, as here as to 1994, the notice of deficiency was mailed more than 3 years after the filing date. See Farmers Feed Co. v. Commissioner, 10 B.T.A. 1069, 1075-1076 (1928).

Petitioners timely filed joint Federal income tax returns for 1994 and 1995. They signed a Form 872, Consent to Extend the Time to Assess Tax, in November 1997, extending the period to assess tax for 1994 to June 30, 1999. Respondent mailed a notice of deficiency for 1994 and 1995 on June 23, 1998, which was prior to the expiration of the periods to assess tax for petitioners for 1994 and 1995.

---

[1] Because of our holding, we need not decide whether petitioners must capitalize expenditures for improvements to land and buildings with a useful life beyond the years in issue.

The running of the period of limitations is suspended when a notice of deficiency is mailed, and, if a proceeding with respect to the deficiency is brought before this Court, the period of limitations remains suspended until the decision of this Court becomes final and for 60 days thereafter.  See secs. 6213(a), 6503(a)(1); sec. 301.6503(a)-1, Proced. & Admin. Regs.  Thus, the time for assessment of tax for 1994 and 1995 remains open until 60 days after our decision in this case becomes final.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.