T.C. Memo. 2011-167

UNITED STATES TAX COURT

RONALD J. ZENZEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28268-09.              Filed July 12, 2011.

Ronald J. Zenzen, pro se.

Tracie M. Knapp, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  Respondent determined deficiencies in
petitioner's 2005, 2006, and 2007 Federal income taxes of $4,062,
$6,571, and $15,409, respectively.

The issue for decision is whether petitioner's drag racing
activity is to be treated as an activity engaged in for profit

under section 183(a). The trial of this case was held on February 28, 2011, in St. Paul, Minnesota.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time his petition was filed, petitioner resided in Minnesota.

For over 35 years and during the years in issue petitioner worked full time as a mechanic for Xcel Energy (formerly known as Northern States Power). During the years in issue petitioner's annual salary was approximately $68,000. The combined total salaries of petitioner and his wife were $115,944 in 2005, $116,979 in 2006, and $168,739 in 2007.

Around 1970 petitioner began participating in drag racing as a volunteer crew member and mechanic, volunteering with various racing teams and gaining experience and knowledge. Between 1970 and 1988 petitioner received no compensation for his drag racing activities. During these years petitioner owned a transporter which he used to move drag racing cars to racing events.

In 1988 petitioner purchased his first drag racing car and began racing it himself.

In 1998 petitioner established his own drag racing team with his two children.  Petitioner and his two children were the only members of petitioner's drag racing team and were the only individuals who conducted maintenance on and raced petitioner's drag racing cars.

In 1999 petitioner purchased a 1978 Chevrolet Corvette for $10,000 to race.

In 2004 petitioner purchased a 1989 Chevrolet IROC-Z28 for $11,000, also to race.  Petitioner replaced this car's engine with a used 305 stock car motor, which cost petitioner $7,500.  In 2008 petitioner sold this car for $17,250.  Also in 2004 petitioner purchased a new transporter to haul his drag racing cars to races and to use as an office and sleeping space when petitioner's racing team competed away from home.

In 2005 petitioner made some improvements to his racing cars and acquired various other assets to be used in connection with his drag racing activity.

At no time did petitioner have a written business plan for his drag racing, and he did not maintain a general ledger, annual budget and expense forecasts, or a separate bank account relating to his drag racing activity.  Petitioner merely saved receipts reflecting his drag racing expenses.

At no time before 2005 or during the years in issue did petitioner speak with a business adviser about ways to make a profit in drag racing.

Petitioner took several steps to improve his team's performance in local, regional, and national drag racing competitions. In 2007 petitioner purchased a 1987 Chevrolet Camaro for $29,400 to race. After purchasing this car, petitioner established regular communication with the car's builder, who advised petitioner on improving the car's performance. Petitioner communicated with Hi-Performance Engine Services (Hi-Performance), a nationally regarded builder of race car engines, for advice, parts, and service relating to his cars. Petitioner did not pay Hi-Performance for its advice.

During race seasons petitioner and his children would spend about 30 hours per week preparing the race cars. This time was in addition to the time spent participating in weekend races.

During the off-season petitioner and his children would spend about 20 hours per week working on the race cars. Occasionally, petitioner had the engines in his race cars "refreshened" to increase performance. Petitioner approximates that $15,000 was spent in each of the years in issue to refresh the engines.

Through his drag racing activity, petitioner was able to spend a significant amount of time with his children, which

brought him personal pleasure. Petitioner did not pay his children for their involvement in petitioner's drag racing activity, and all winnings from race events were used in the maintenance of the racing cars and the transporter.

During the years in issue petitioner did not receive any income from commercial sponsors for his drag racing cars. However, petitioner's drag racing cars each displayed 24 to 30 "contingency sponsor" decals. The owner of a race car with that number of contingency sponsor decals who wins a national drag racing event would receive approximately $12,000, and for a second-place finish, $4,500. For a first-place finish at a divisional event, the owner would receive approximately $4,000, and for a second-place finish, $2,000.[1]

During the years in issue the only income petitioner received from his drag racing activity came from race winnings which petitioner's team occasionally won at various local, divisional, and national racing events. Petitioner did not receive any income from contingency sponsors for any of the years in issue. The following table summarizes all of petitioner's drag racing income during the years in issue:

---

[1]These amounts apparently reflect both contingency awards and purse winnings from a race.

| Date | Type of Event | Race Income |
|------|---------------|-------------|
| 5/5/05 | Local | $100 |
| 7/22/05 | Local | 600 |
| 9/5/05 | Local | 150 |
| 5/20/06 | Local | 200 |
| 6/23/06 | Local | 250 |
| 8/13/06 | National | 400 |
| 9/2/06 | Local | 100 |
| 7/27/07 | Local | 200 |
| 8/23/07 | Divisional | 150 |

Before filing his 2005 Federal income tax return, petitioner spoke with his accountant, Joan Jaye, to determine whether to file a Schedule C, Profit or Loss From Business, in connection with his drag racing activity. Specifically, petitioner and Ms. Jaye discussed the nine factors under section 1.183-2(b), Income Tax Regs. As a result of this discussion, petitioner decided to file a Schedule C in connection with his 2005, 2006, and 2007 Federal income tax returns.

Petitioner timely filed his 2005, 2006, and 2007 Federal income tax returns. As noted, petitioner attached to each of these returns a Schedule C claiming income and expenses relating to petitioner's drag racing activity as follows:

|  | Schedule C | | |
|------|--------|----------|------------------------|
| Year | Income | Expenses | Net Profit or Loss |
| 2005 | $850 | $25,044 | ($24,194) |
| 2006 | 950 | 34,702 | (33,752) |
| 2007 | 350 | 60,064 | (59,714) |

On audit respondent disallowed in full petitioner's claimed Schedule C drag racing losses on the basis that petitioner was

not engaged in the drag racing activity with the intent to make a profit. Respondent recharacterized expenses relating to petitioner's drag racing activity as nondeductible personal expenditures.

## OPINION

Section 162(a) allows deductions for all ordinary and necessary expenses paid or incurred during a taxable year in carrying on a trade or business. In the case of an activity not engaged in for profit, section 183 generally limits allowable deductions attributable to the activity to the extent of gross income generated by the activity. Sec. 183(b).

The test for determining whether a taxpayer is carrying on an activity for profit is whether the taxpayer's actual and honest objective in engaging in the activity is to make a profit. See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). Although the taxpayer's expectation of profit need not be reasonable, it must be a good-faith expectation. See Allen v. Commissioner, 72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs. Greater weight is to be given to objective facts than to a taxpayer's statement of intent. See Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexhaustive list of factors to be considered in determining

whether an activity is engaged in for profit.  No single factor or set of factors is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective. Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), affg. T.C. Memo. 2007-309; see also Osteen v. Commissioner, 62 F.3d 356, 358 (11th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1993-519.  Petitioner bears the burden of proof on this issue.[2]  See Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

We discuss below each factor as applied to petitioner's drag racing activity.

Manner in Which the Taxpayer Carried On the Activity--Sec. 1.183-2(b)(1), Income Tax Regs.

Elements relevant to this factor include whether the taxpayer maintained complete and accurate books and records, whether the taxpayer conducted the activity in a manner substantially similar to comparable businesses that are profitable, and whether changes were attempted in order to improve profitability.  Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); Emerson v. Commissioner, T.C. Memo. 2000-137.

---

[2]Petitioner has neither claimed nor shown that he has satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent with regard to any factual issue.

Petitioner argues that in 2005 he attempted to convert his racing activity into a for-profit business venture.[3] Petitioner, however, did not maintain books or written records, had no formal business plan, and did not create annual budget and expense forecasts relating to drag racing. Although a taxpayer is not required to maintain a sophisticated system of accounting, the taxpayer should keep documents that allow the taxpayer to make informed business decisions. Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523; see also Whitener v. Commissioner, T.C. Memo. 1979-415 (taxpayer who kept no business books or records did not conduct his stock car racing activity in a businesslike manner).

Petitioner saved receipts from expenses relating to his drag racing; however, there is no evidence that petitioner used these receipts as a management tool to reduce expenses or increase profitability. Petitioner offered no evidence of how comparable profitable businesses operate. This factor weighs against petitioner.

Expertise of the Taxpayer or His Advisors--Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner had extensive experience with drag racing; he has been involved in the activity in various capacities for over 40 years. During the years in issue petitioner sought advice on

---

[3]Petitioner concedes that before 2005 he engaged in the drag racing activity essentially as a hobby.

ways to improve the performance of his drag racing cars. However, the focus here is on expertise and preparation with regard to the economic aspects of the activity. Wesinger v. Commissioner, T.C. Memo. 1999-372. Petitioner has not shown that he possessed the requisite expertise regarding the business aspects of drag racing or that he relied on anyone who had that expertise. The fact that petitioner did not seek advice on the economic aspects of his drag racing activity suggests that petitioner lacked a profit objective. See Filios v. Commissioner, T.C. Memo. 1999-92, affd. 224 F.3d 16 (1st Cir. 2000). This factor favors respondent.

### Time and Effort Expended in Carrying On the Activity--Sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner dedicated a significant amount of time and effort to his drag racing activity. While this fact tends to favor petitioner's position, petitioner also derived substantial personal enjoyment from drag racing. For over 30 years petitioner considered drag racing a hobby--it is unlikely that in 2005, 2006, and 2007 petitioner ceased to derive similar enjoyment from the activity. Petitioner found personal pleasure in traveling to weekend race events, watching his team participate in events, and developing friendships with individuals involved in drag racing. The time petitioner devoted to his drag racing activity was also time petitioner spent with his children. On balance, we find that this factor is neutral.

Expectation That Assets May Appreciate in Value--Sec. 1.183-2(b)(4), Income Tax Regs.

Petitioner claims that, as a result of maintenance and improvements petitioner and his team made to petitioner's drag racing cars, petitioner expected his cars to appreciate in value. Petitioner directs our attention to his Chevrolet IROC-Z28, which petitioner purchased in 2004 for $11,000 and sold in 2008 for $17,250. Petitioner claims that he sold this car at a gain, even after the cost of the replacement engine and other improvements he made. We have held, however, that when property's appreciation in value is independent of the claimed business activity, the gain realized from a sale of the property will not be a significant factor in evaluating the nature of the activity in question. Spear v. Commissioner, T.C. Memo. 1994-354; Wright v. Commissioner, T.C. Memo. 1990-630; Ruben v. Commissioner, T.C. Memo. 1986-260, affd. without published opinion 852 F.2d 1290 (9th Cir. 1988). Petitioner has failed to show how the increase in value of this car--or, for that matter, of any other asset--is attributable to petitioner's success in drag racing activity rather than to the value of petitioner's labor. This factor favors respondent.

- 12 -

Success of Taxpayer in Other Activities--Sec. 1.183-2(b)(5),
Income Tax Regs.

Petitioner was not involved in any other business activities apart from his employment with Xcel Energy.  This factor favors respondent.

Taxpayer's History of Income or Losses--Sec. 1.183-2(b)(6),
Income Tax Regs.

A series of losses during the startup period of an activity is not necessarily an indication that the activity is not engaged in for profit, bearing in mind, however, that the objective must be to realize a profit on the entire operation--future net earnings and also enough earnings to recoup losses that have been incurred in intervening years.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); Emerson v. Commissioner, T.C. Memo. 2000-137.

During the years in issue petitioner received only $2,150 in cash awards while spending $117,660 on his racing activity. Petitioner's losses increased substantially from 2005 to 2006, and even more substantially from 2006 to 2007.  On the basis of petitioner's record of significant losses, we find it unlikely that petitioner will be able to recoup his expenditures.  This factor favors respondent.

## Amount of Occasional Profits, If Any--Sec. 1.183-2(b)(7), Income Tax Regs.

With the exception of the occasional small cash awards petitioner received, petitioner's drag racing activity produced no income.

An opportunity to earn a substantial ultimate profit in a highly speculative venture may be sufficient to indicate that an activity is engaged in for profit. Sec. 1.183-2(b)(7), Income Tax Regs. Drag racing is unquestionably a highly speculative venture. Petitioner, however, has not convinced us that he had a real opportunity to earn a profit in his drag racing activity.

The losses petitioner incurred in connection with his drag racing activity were over 54 times the amount of income earned. This factor favors respondent.

## Financial Status of the Taxpayer--Sec. 1.183-2(b)(8), Income Tax Regs.

"The rationale for this rule is that a taxpayer with substantial income unrelated to the activity can more easily afford to operate the activity as a hobby." Emerson v. Commissioner, supra.

During the years in issue petitioner worked full time at Xcel Energy, earning an annual salary of $68,000, and the combined total wages of petitioner and his wife during each of

the years in issue exceeded $115,000.[4]  Substantial income from sources unrelated to the activity in question--particularly if losses from the activity generate substantial tax benefits--may indicate that an activity is not engaged in for profit.  Sec. 1.183-2(b)(B), Income Tax Regs.  This factor favors respondent.

Elements of Personal Pleasure--Sec. 1.183-2(b)(9), Income Tax Regs.

It is indisputable that petitioner obtained enjoyment from his drag racing activity, especially considering the extra time he was able to spend with his children.  This factor favors respondent.

On balance, we are not convinced that during the years in issue petitioner engaged in the drag racing activity for profit. To the contrary, we believe that petitioner was engaged in this activity because of his long-held interest in drag racing, derived substantial personal pleasure from the activity, and had no good-faith expectation of making a profit.  Petitioner's losses are not deductible.

To reflect the foregoing,

Decision will be entered

for respondent.

_____

[4]In 2007 the combined wages of petitioner and his wife were $168,739, an approximately 44-percent increase from 2006. Petitioner's drag racing expenses in 2007 were $59,714, an increase of over 75 percent from 2006.