T.C. Memo. 2018-67

UNITED STATES TAX COURT

CECILE BARKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21067-14.                         Filed May 21, 2018.

<u>Jose M. Ferrer</u> and <u>Jeffrey L. Rubinger</u>, for petitioner.

<u>W. Robert Abramitis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  Respondent determined a deficiency of $1,807,886 in

petitioner's Federal income tax for 2011 and an addition to tax under section 6651

of $451,971.[1]  After concessions, the issues for decision are:  (1) whether SoBe

_____

    [1] Unless otherwise indicated, section references are to the Internal Revenue

                                                                    (continued...)

[*2] Entertainment International LLC (SoBe) was engaged in a trade or business for profit for tax years 2003 through 2011; (2) whether SoBe incurred the losses reported on its returns for tax years 2003 through 2011; (3) whether SoBe claimed any business expense deductions between tax years 2003 and 2011 for costs that it should have capitalized; (4) whether petitioner had a sufficient basis in his interest in SoBe to deduct his distributive share of losses; and (5) whether petitioner is liable for an addition to tax for failure to file a timely return under section 6651(a) for 2011.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference. Petitioner resided in Florida at the time he timely filed his petition.

I. SoBe Entertainment International LLC

Petitioner earned an undergraduate degree in physics and a graduate degree in aerospace engineering, and he worked as an aerospace engineer beginning in the mid-1960s. Petitioner also was involved in the music business during this

---

[1](...continued)
Code of 1986 (Code), as amended, in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar. Unless otherwise specified, descriptions of petitioner's and SoBe's activities are as of 2011.

[*3] time:  He formed the group Peaches & Herb, which achieved considerable commercial success, and in 1973 he coproduced the Grammy-winning song "Midnight Train to Georgia" by Gladys Knight & the Pips.  Shortly thereafter, petitioner formed his own aerospace engineering company and left the music industry to focus on his company's success.  Petitioner sold his company in 2001 and decided to reenter the music business.

A.  SoBe's Founding

Petitioner formed SoBe on November 8, 2002, as a Delaware limited liability company.  Petitioner contributed 100% of the capital to SoBe and owns 95% of SoBe's profit and loss; his son, Yannique, and daughter, Angelique, split the remaining 5% evenly.  SoBe is an independent entertainment company that signs artists and celebrities, produces music and/or videos, and promotes its artists and distributes their work.  Petitioner served as SoBe's chief executive officer (CEO) and managing member from its formation and he was devoting 40 to 60 hours per week to it at the time of trial.  Petitioner consulted with music industry professionals in preparation for SoBe's formation and retained the services of several high-profile producers--such as Scott Storch, Pharrell Williams, Swizz Beatz, and Timbaland--to bolster SoBe's chances of success.  SoBe employed a marketing professional at the time of trial and previously employed a chief

**[*4]** financial officer (CFO).  In total, SoBe had eight employees and it routinely hired independent contractors.  SoBe issued Forms W-2, Wage and Tax Statement, and Forms 1099-MISC, Miscellaneous Income, to its employees and independent contractors.

SoBe signed several artists to contracts, including:  Petitioner's son, Yannique, professionally known as Stack$; Brandon Williams, professionally known as Urban Mystic; Christian Ward, professionally known as Iceberg; Lola Zaidline-Delon; Jarius Brown, professionally known as Hollywood J; Phyllisia Ross; Ce'Cile Charlton; Brooke Hogan; and Paul Wight.  It has renewed at least one artist contract.  SoBe contracted with producers and writers to work with its signed artists.  And SoBe entered into a distribution agreement with Isolation Network, an arm of Universal Music, to distribute music digitally.

SoBe advanced the cost of producing, promoting, and distributing music for its signed artists.  SoBe used several platforms to advertise its services and promote its artists.  It advertised online and through its websites, www.sobeentertainment.com and www.sobeswaglabs.com, posted music on free video sharing sites, and placed advertisements on industry blogs.  It also placed advertisements in print magazines and scheduled meetings to advertise by word of

[*5] mouth among those working in the music industry. Additionally, SoBe was a member of the trade organization, the Record Industry Association of America.

Petitioner saw stars, such as Adele, Taylor Swift, and Justin Bieber, as examples of how one artist could make SoBe profitable. While none of its artists had achieved such a level of commercial success at the time of trial, they had each contributed to the catalog of songs that SoBe owned. Its catalog had value; in March 2016, it placed a song in a television show on ABC.

SoBe was founded during a time of major change in the music industry, brought on by the advent of online platforms on which people could buy or sell music at low cost or share it for free. SoBe was required to cut costs as a result of the effects that these platforms had on the music industry; it reduced its employees from 16 or 17 to 8, including petitioner, and moved its recording studio to a less expensive location. SoBe has never earned a profit, and its cumulative losses have increased from year to year.

B. Yannique Barker

Yannique Barker began recording songs at SoBe's studios around 2003 while he was a student at the University of Southern California in Los Angeles. Yannique had no recording experience when he began recording. Shortly thereafter, Yannique moved to Miami and continued his studies at the University

[*6] of Miami and began to intern at SoBe. While he was not paid for his work as an intern, it was agreed that Yannique would be paid "when operational cash flow justifies it" or upon SoBe's liquidation.

SoBe signed Yannique to a record contract in 2005 to perform under the stage name, Stack$. Under that contract, SoBe advanced Yannique approximately $2,400,000 or $2,500,000 to promote him as a hip-hop artist. SoBe paid prominent hip-hop artists, such as Lil Wayne, Pitbull, The Game, and P. Diddy, to collaborate with Yannique as part of its promotion of Yannique's music. SoBe also has paid prominent artists to collaborate with its other signed acts.

C. SoBe's Finances

John McQuagge was SoBe's CFO and controller from 2006 through 2010. During his tenure Mr. McQuagge kept SoBe's books using the software, Quickbooks. Mr. McQuagge used Quickbooks to produce SoBe's general ledger and journals. SoBe had two separate bank accounts, one used as a primary operating account and one used for payroll. Mr. McQuagge balanced the accounts against monthly bank statements. The record includes SoBe's bank account statements from 2002 through 2012 and copies of SoBe's checks from 2006 through 2010. The record also includes the general ledger from 2005 through 2009. The record does not include copies of SoBe's checks from 2003, 2004,

**[*7]** 2005, or 2011 or SoBe's general ledger for years 2003, 2004, 2010, or 2011. Some expenses recorded in SoBe's general ledger were paid by credit card or cash, rather than by check. Other than bank statements, the record has no documentation for those expenses.

### D. SoBe's Tax Returns

Outside accounting firms Deiner & Associates and Foodman CPAs & Advisors prepared SoBe's tax returns from tax years 2003 through 2005 and 2006 through 2011, respectively. Stanley Foodman, of Foodman CPAs & Advisors, personally prepared SoBe's tax returns for tax years 2006 through 2009. These outside accountants had access to all of SoBe's information in Quickbooks for preparation of SoBe's tax returns.

SoBe was treated as a partnership for Federal income tax purposes from its formation to the time of trial and reported its income on a calendar year basis.[2] SoBe treated the records and videos it sold as goods for purposes of determining its cost of goods sold. On its Forms 1065, U.S. Return of Partnership Income, for the tax years 2003 through 2011, SoBe reported the following:

---

[2] SoBe is exempt from the procedural rules of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648 (codified at secs. 6221-6232), because it meets the definition of a small partnership. See sec. 6231(a)(1)(B).

[*8]

| Year | Income (loss) | Deductions | Ordinary business income (loss) |
|------|------|------|------|
| 2003 | -0- | $2,393,034 | ($2,393,034) |
| 2004 | -0- | 4,671,205 | (4,671,205) |
| 2005 | -0- | 12,303,351 | (12,303,351) |
| 2006 | ($3,467,692) | 3,003,696 | (6,471,658) |
| 2007 | 699,053 | 2,466,035 | (1,766,982) |
| 2008 | (3,990,043) | 1,122,071 | (5,112,114) |
| 2009 | (3,957,767) | 1,072,258 | (5,030,025) |
| 2010 | -0- | 4,474 | (4,474) |
| 2011 | -0- | 11,944 | (11,944) |
| Total | (10,716,449) | 27,048,068 | (37,764,787) |

## II. Petitioner's Tax Returns

Mr. Foodman prepared petitioner's income tax returns for tax years 2005 though 2011. Mr. Foodman calculated petitioner's net operating losses (NOLs) and petitioner's total capital contributions to SoBe for years 2002 through 2011 and listed each of petitioner's individual capital contributions to SoBe in tax years 2006 through 2009. Mr. Foodman calculated that petitioner made a total of $45,339,138 in capital contributions between 2002 and 2011. Mr. Foodman's calculations were based on the Schedules K-1, Partner's Share of Income,

**[*9]** Deductions, Credits, etc., from SoBe for tax years 2002 through 2011, supplemented by SoBe's general ledger and bank statements.

Petitioner reported income from sources besides SoBe, often in the form of capital gains, interest, and dividends. Most of his other income in 2011 came from Mistral, a defense contractor with offices in the United States and Israel that petitioner helped to found. Mistral lost money for several years before becoming profitable. Petitioner received two payments of $3,375,000 in 2011 in connection with a settlement with Mistral, one in exchange for petitioner's consulting services and the other for petitioner's stock. The payment for petitioner's stock was reported on his 2011 Schedule D, Capital Gains and Losses. The payment for petitioner's consulting services was not reported on his 2011 Form 1040, U.S. Individual Income Tax Return.

Mr. Foodman calculated petitioner's income or loss after taking into account petitioner's interest and dividend income, net capital gains and losses, and share of gain or loss reported on the Schedules K-1 from SoBe and other businesses in which he held an interest. The record includes petitioner's Forms 1040 for tax years 2005 through 2011.[3] For those years, petitioner reported:

---

[3] Petitioner did not provide the Court with his Forms 1040 from tax years 2002, 2003, or 2005. Petitioner's 2007 Form 1040 does not include the amount of

(continued...)

[*10]

| Year | AGI | Income or loss from SoBe | NOL carryover |
|------|------|--------------------------|----------------|
| 2005 | ($9,722,763) | ($11,688,183) | --- |
| 2006 | (6,745,444) | (6,148,076) | --- |
| 2007 | (7,736,181) | --- | --- |
| 2008 | (13,392,436) | (4,856,508) | $9,309,592 |
| 2009 | (15,611,847) | (4,778,523) | 13,462,383 |
| 2010 | (19,505,311) | (863,982) | 16,844,601 |
| 2011 | (18,645,313) | (827,325) | 19,635,128 |

III. Notice of Deficiency and Petition

Petitioner was a victim of identity theft when another person filed a tax return for 2011 using his Social Security number. Respondent issued a notice of deficiency to petitioner on June 2, 2014, before petitioner sent his 2011 Form 1040, which respondent received on August 8, 2016. The notice of deficiency determined adjustments to petitioner's rents and royalties, interest, dividends, capital gains, Social Security income, nonemployee compensation, and self-

---

[3](...continued)
income or loss that he received from SoBe in that year. Additionally, petitioner's Forms 1040 do not report the amount of NOL carryover for tax years 2005 through 2007 or whether petitioner elected to waive the carryback period for those years. Petitioner did waive the carryback period for tax years 2008, 2009, and 2010. Finally, the record is insufficient for the Court to reconcile the amounts of loss petitioner reported in tax years 2010 and 2011 with the amounts of loss that SoBe reported incurring in those years on its Forms 1065.

[*11] employment tax deduction.  In total, respondent determined that petitioner owed an additional $1,259,279 in tax for the 2011 tax year.  The notice of deficiency also determined a substantial understatement penalty.  In his answer to an amended petition respondent asserted a 25% addition to tax for petitioner's failure to file his 2011 return on time.  At trial respondent conceded the penalty as it was based on the identity theft return.

OPINION

## I.  Burden of Proof

Ordinarily, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

## II.  Net Operating Losses

Section 172 allows a taxpayer to deduct NOLs for a taxable year.  The amount of the NOL deduction equals the aggregate of the NOL carryovers and NOL carrybacks to the taxable year.  Sec. 172(a). Section 172(c) defines an NOL as the excess of deductions over gross income, computed with certain

[*12] modifications specified in section 172(d).  Absent an election under section 172(b)(3), an NOL for any taxable year first must be carried back 2 years and then carried over 20 years.  Sec. 172(b)(1)(A), (2), (3).

The NOL deduction is a matter of legislative grace; it is not an automatic right.  See Power v. Commissioner, T.C. Memo. 2016-157, at *13 (citing United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955)).  Taxpayers bear the burden of establishing both the existence of NOLs and the amounts that may be carried over or back to the taxable years in issue.  See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000).  Specifically, a taxpayer must prove, as to NOLs amassed from ownership of a passthrough entity not subject to TEFRA, that (1) the entity incurred operating losses (deductions allocated to him exceeded income allocated to him), (2) he had a sufficient basis in the entity in each year the losses were incurred (if applicable), (3) no other limitations applied to his realization of the losses, and (4) the losses were properly carried over and/or back to the years in issue.  See Jasperson v. Commissioner, T.C. Memo. 2015-186, at *8 (citing Philpott v. Commissioner, T.C. Memo. 2012-307, and Miller v.

[*13] Commissioner, T.C. Memo. 2006-125), aff'd, 658 F. App'x 962 (11th Cir. 2016). Further,

> [i]t is well settled that we may determine the correct amount of taxable income or net operating loss for a year not in issue (whether or not the assessment of a deficiency for that year is barred) as a preliminary step in determining the correct amount of a net operating loss carryover to a taxable year in issue.

Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), aff'd without published opinion, 510 F.2d 970 (3d Cir. 1975). Taxpayers cannot rely solely on their own income tax returns to establish the losses they sustained.[4] See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); see also Power v. Commissioner, at *14-*15.

---

[4] Petitioner asserts that he has provided complete and conclusive documentation and credible testimony to substantiate his NOL deduction sufficient to shift the burden of proof under sec. 7491(a). Under sec. 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." See Higbee v. Commissioner, 116 T.C. 438, 442 (2001) ("Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)." (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995)). The resolution of this issue, however, does not depend on which party has the burden of proof. We resolve it based on a preponderance of the evidence in the record. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008); Schank v. Commissioner, T.C. Memo. 2015-235, at *16.

**[*14]** A.  <u>SoBe's Lack of Substantiation</u>

Respondent challenges petitioner's 2011 NOL deductions on the following theories.  First, he argues that SoBe did not incur any operating losses--and thus no operating losses flowed through to petitioner--because SoBe is a hobby rather than a trade or business.  In the alternative, he argues either that petitioner could not substantiate the expenses giving rise to the operating losses or that the expenses should have been capitalized, not deducted.  Finally, he contends that, if SoBe's business expense deductions flow through to petitioner, petitioner did not have a sufficient basis in his interest in SoBe to take those deductions.

1.  <u>Trade or Business</u>

Respondent contends that SoBe does not meet the requirements of a trade or business because petitioner's primary purpose for founding SoBe was not to make a profit.  Therefore, our initial inquiry is whether SoBe is a trade or business.  Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Aside from narrow definitions for specific situations, "trade or business" is not defined in the Code.  <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 27 (1987).  "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for

[*15] engaging in the activity must be for income or profit.  A sporadic activity, a hobby, or an amusement diversion does not qualify." Id. at 35.  Determining the existence of a trade or business "requires an examination of the facts in each case." Higgins v. Commissioner, 312 U.S. 212, 217 (1941).  In particular, respondent contends that petitioner did not have "the actual and honest objective of making a profit." See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd, 702 F.2d 1205 (D.C. Cir. 1983).  Rather, he argues that petitioner's objectives were to provide a creative use for his time and wealth in his semiretirement and to promote the musical aspirations of his son, Yannique.  Petitioner, on the other hand, argues that SoBe was run as a business from its formation and that making a profit has always been its primary objective, even though it had yet to make one.

To be entitled to deductions under section 162, SoBe must have entered into the music business with the "actual and honest objective of making a profit." Osteen v. Commissioner, 62 F.3d 356, 358 (11th Cir. 1995), aff'g in part, rev'g in part T.C. Memo. 1993-519; Dreicer v. Commissioner, 78 T.C. at 645; see also sec. 183(c).  We determine the existence of such an objective at the partnership level, Brannen v. Commissioner, 722 F.2d 695, 703-704 (11th Cir. 1984), aff'g 79 T.C. 471 (1992), and "we focus on the intent of the general partner * * * since it is [this] individual[] who actually controlled the partnership's activities", Fuchs v.

[*16] Commissioner, 83 T.C. 79, 98 (1984).  Our determination is based on the application of objective standards to all of the facts and circumstances of each case.  Sec. 1.183-2(a), Income Tax Regs.  Objective facts outweigh the taxpayer's statement of intent.  Id.  However, there need not be a reasonable expectation of profit in order to find a profit motive; showing a small chance of making a large profit may be sufficient.  Id.

Section 1.183-2(b), Income Tax Regs., provides nine nonexclusive factors to take into account in determining whether a profit motive exists:  (1) the manner in which the taxpayer carries on his activity; (2) the expertise of the taxpayer and his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) whether the assets used in the activity are expected to appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the extent to which the taxpayer derives personal pleasure or enjoyment from the activity.  Our consideration is not limited to these factors and none of them is determinative.

The totality of the facts and circumstances indicate that petitioner--SoBe's CEO and managing member--operated SoBe as a trade or business with the "actual

**[*17]** and honest objective of making a profit." See Osteen v. Commissioner, 62 F.3d at 358. Petitioner had prior business successes in the music industry--he founded Peaches & Herb and co-produced a Grammy-winning song for Gladys Knight & the Pips--and he ran successful defense contracting businesses, having helped to turn one of them around after several years without a profit. Petitioner leveraged his prior experience and contacts in the music industry as he prepared for SoBe's formation and he ran SoBe in a businesslike manner, working there full time. He also devoted significant capital to make it a profitable business. While SoBe was not profitable from its founding in 2002 through 2011--nor, indeed, through the time of trial--petitioner testified that SoBe positioned itself well to make a profit by amassing a catalog of songs that it has been able to monetize. Petitioner also convincingly testified about the turmoil in the music industry and the difficulties faced by artists and producers over the years in issue.

The fact that petitioner's son, Yannique, was one of SoBe's signed artists and that SoBe had advanced him the costs of recording, producing, and promoting his music does not mean that SoBe was merely a vehicle to fund Yannique's musical aspirations or that SoBe had no profit objective. SoBe had other artists; it did not devote most of its resources to Yannique. We also conclude that the other facts favoring characterization as a hobby, such as the fact that petitioner enjoyed

**[*18]** the creative aspects of the music industry and had income from other sources and that SoBe had yet to make a profit as of trial, are outweighed by the facts indicating a profit motive.

Thus, we conclude for years 2003 through 2011 that SoBe is a trade or business and is eligible to claim deductions under section 162.

### 2. SoBe's Business Expenses

Our next inquiry is whether SoBe incurred the business expenses giving rise to its operating losses. To deduct business expenses, a taxpayer must show that the expenses were "directly connected with 'carrying on' * * * [a] business" and that they were "ordinary and necessary" within the meaning of section 162. Commissioner v. Heininger, 320 U.S. 467, 470 (1943); see also Kennelly v. Commissioner, 56 T.C. 936, 941 (1971), aff'd, 456 F.2d 1335 (2d Cir. 1972); sec. 1.162-1(a), Income Tax Regs. Taxpayers are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001). Under the Cohan rule, the Court may estimate the amount of the expense if the taxpayer is able to demonstrate that he has paid or incurred a deductible expense but cannot substantiate the precise amount, as long as he produces

[*19] credible evidence providing a basis for the Court to do so. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).

We must determine SoBe's income and expenses for all prior years for which SoBe reported losses. See Power v. Commissioner, at *14 ("[P]etitioners must introduce convincing evidence that Mr. Power incurred NOLs in the taxable years 1999-2002 and also prove Mr. Power's taxable income for the period beginning with 1997 and ending with 2006."). The only documentation to support SoBe's business expense deductions for the 2003, 2004, and 2011 tax years are SoBe's bank statements. But petitioner testified that SoBe made some payments with credit cards or cash. Bank statements do not document the amounts of SoBe's expenses paid by cash or credit card, nor do they describe the business purpose of the expenditure. Canceled checks would provide some context but petitioner provided them for only 2006 through 2010. No documentation other than the general ledger includes payments made by credit cards and cash, but petitioner provided the general ledger for only 2005 through 2009. Petitioner's testimony and that of the other witnesses was insufficient to fill the gaps.

Neither petitioner, Mr. McQuagge, nor Mr. Foodman testified about how SoBe's tax returns were prepared. Testimony at trial only revealed which company prepared them, that Mr. McQuagge provided documents to assist in their

[*20] preparation, and that petitioner considers records and videos to be the goods SoBe sells for purposes of calculating its cost of goods sold. Because petitioner has access to additional documentation that would make substantiation possible-- at the very least, the general ledger for all of the years of SoBe's existence--and he nonetheless failed to produce it, we presume that it would be unfavorable to petitioner. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Thus, we conclude that petitioner failed to provide us with evidence on which we can determine or even base an estimate of the total amount of SoBe's business expenses for all prior years of operation. Petitioner failed to substantiate the amounts and the business purpose of SoBe's expenses for--at a minimum--tax years 2003, 2004, 2010, and 2011.

B. 2011 Net Operating Losses

SoBe is taxed as a partnership and, as such, it is not subject to income tax. See sec. 701. Rather, its gains and losses flow through to its partners, each of whom takes his or her distributive share into account on his or her personal return. Id. Petitioner owns 95% of SoBe's gain or loss. Petitioner has failed to substantiate SoBe's income and business expenses for all prior years of existence and, in turn, the amount of losses for which he claimed a deduction for 2011; if we

**[\*21]** are not able to estimate the amount of SoBe's operating losses, we cannot know how much flows through to petitioner.

Further, even if petitioner was able to substantiate SoBe's business expenses, we cannot know how much of those losses was absorbed by petitioner's other income in the years prior to 2011. Petitioner did not produce his tax returns for the years 2002 through 2004. And those that he produced for 2005, 2006, and 2007 are missing crucial information, such as the amount of loss that flowed through to him from SoBe, his NOL carryover from previous years, or whether he elected to waive the carryback period. See sec. 172(b)(3). Without this information, we are unable to determine what effect petitioner's tax items or elections in previous years had on his 2011 NOL deduction. See Power v. Commissioner, at \*13-\*14 ("Petitioners must prove not only that Mr. Power incurred NOLs in 1999-2002 but also that the NOLs were not absorbed during the period beginning with 1997 (the earliest carryback year) and ending with 2006 (the last year before the first taxable year in issue)."); Leitgen v. Commissioner, T.C. Memo. 1981-525, 42 T.C.M. (CCH) 1130, 1131-1132 (1981) ("The burden is on petitioners to prove their incomes for 1969, 1970 and 1971 in order to show that there was any part of the alleged 1972 loss that would not have been absorbed in the three preceding years and that could have been carried over to the years in

[*22] issue."), aff'd, 691 F.2d 504 (8th Cir. 1982). Thus, we conclude that petitioner has failed to provide us with credible evidence on which we can base an estimate of his NOL deduction for 2011.

Because we find that petitioner cannot substantiate his NOL deductions, we do not reach the issue of whether any of SoBe's business expense deductions between 2003 and 2011 were costs that should have been capitalized or whether petitioner had a sufficient basis in his interest in SoBe to deduct his distributive share of losses.

III. Addition to Tax

Typically, the Commissioner bears the burden of production with respect to an individual taxpayer's liability for additions to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner satisfies the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer has an affirmative defense such as reasonable cause. See Higbee v. Commissioner, 116 T.C. at 446-447. The Commissioner bears the burden of proof with respect to any new matter pleaded in the answer. Rule 142(a)(1). But the burden of showing reasonable cause under section 6651(a) remains on the taxpayer. Reifler v. Commissioner, T.C. Memo. 2015-199, at *9.

**[\*23]** Respondent determined that petitioner is liable for the section 6651(a)(1) addition to tax because his return was filed several years after its deadline. Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless it is shown that the failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). Whether a taxpayer has "reasonable cause" within the meaning of section 6651(a)(1) depends on whether the taxpayer exercised "ordinary business care and prudence" but was nevertheless unable to file the return within the prescribed time. Id. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner filed his 2011 Form 1040 close to two years after the deadline. He explained that he did not file his return because he was the victim of identity theft and was under the impression that the IRS would have to resolve any conflicts relating to the identity theft. That does not excuse his failure to file his return when due. There is a personal and nondelegable duty to file a tax return by the due date. United States v. Boyle, 469 U.S. at 247. While being a victim of identity theft may have been inconvenient, he is a sophisticated businessman and should know that he is required to file his tax return on time. He engaged accountants and return preparers and could have made inquiries.

**[*24]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.